**REA EXPRESS, INC., Petitioner,**

v.

**Peter J. BRENNAN, Secretary of Labor and the Occupational Safety and Health Review Commission, Respondents.**

**No. 706, Docket 73-1468.**

United States Court of Appeals, Second Circuit.

Argued March 22, 1974.

Decided April 18, 1974.

---

Peter G. Wolfe, New York City, for petitioner.

Stanton R. Koppel, Atty., Dept. of Justice, Washington, D. C. (Irving Jaffe, Acting Asst. Atty. Gen., Stephen F. Eliperin, Atty., on the brief), for respondents.

Before MOORE, FEINBERG and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

The employer, REA Express, Inc. (REA), brings this petition to review a final order of the Occupational Safety and Health Review Commission (Commission), holding the employer liable for a serious violation of the general duty clause of the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. § 654(a)(1). Petition denied.

REA is an interstate carrier which operates a shipping terminal in Long Island City, New York, known as the PXT terminal, the largest facility of its type in the United States covering an area of four or five city blocks. On Saturday, July 31, 1971, the feeder for a conveyor belt failed to operate because of an electrical short circuit in the underground cables. REA's Service Center Manager, Michael Worden, called Frank Traugott, President of FEC, Inc., a licensed electrical contractor which had previously worked for REA in emergency situations. Traugott responded to the call although he had no prior experience in high voltage repairs. After an initial inspection, Traugott advised REA that the problem was probably coming from Consolidated Edison's outside equipment. Later that afternoon, Traugott returned at Worden's request to give advice to Michael Coy, REA's maintenance supervisor, who was working in the circuit breaker room with another REA employee when Traugott arrived. There was water on the concrete floor of the room which Worden attempted to soak up with sawdust, but the floor remained damp. Coy directed an REA employee, Soccio, to cut three cables while the switch was out. However, Coy then pushed the circuit switch back in, which reenergized the cables. Traugott, believing that the wires held only 600 volts instead of the 15,000 volts which was their actual potential, proceeded to test for voltage. In the course of this procedure, a blinding flash occurred which electrocuted Coy, who was standing on the damp concrete floor four or five feet from the cut live wires. Traugott, standing on a wooden platform about two feet from the wires, was knocked unconscious and burned on his hands and arms.

On August 3, 1971, compliance officers of the Department of Labor made an investigation of the accident at the PXT terminal. On August 11, 1971, REA received a citation which charged: "Place of employment furnished to employees by employer not free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." The citation required abatement by August 30, 1971, and assessed a penalty of $900. On August 26, 1971, REA filed a notice of intent to contest the citation and the imposition of the fine. After a three-day hearing in November, 1971, the administrative judge issued a 19-page decision, including findings of fact and conclusions of law, holding that REA had vio-

lated the general duty clause of the Act,[1] and increasing the proposed penalty for the violation from $900 to $1000. The Commission affirmed this decision without opinion on March 28, 1973. This petition for review followed. Since there is substantial evidence on the record to support the Commission's conclusion that the Act was violated, the petition is denied. 29 U.S.C. § 660(a).

■ REA argues that since the circuit room was off limits to its employees generally, it could not be considered a "place of employment." However, the statute requires the employer to furnish "each employee" a place of employment free from recognized hazards. It is apparent from the findings that REA furnished Coy and three other employees the circuit breaker power room as a place to work on the date of the fatal accident. It was in the basement of the terminal where REA operated its business and Coy, as the maintenance supervisor of PXT, had a key to gain access to it. The fact that it was not open to all employees, but only certain authorized personnel, does not in our view render it immune from the coverage of the statute. The general duty clause specifies recognized hazards causing or likely to cause death or serious physical harm. The high voltage circuit room here obviously presented such a hazard and it was so recognized by REA, which usually kept it locked and unavailable to its employees. To exclude it from the coverage of the statute would exonerate the employer from providing occupational protection and safety in the most hazardous areas of its plant, those areas where employees need greatest protection. We refuse to so interpret the statute.

■ REA also contends that the Act does not make the employer an insurer of the safety of the places of work he furnishes; it suggests that the employee must exercise reasonable care for his own safety and urges that the ultimate risk creation and the responsibility here was that of the independent contractor, Mr. Traugott. This argumentation might well be relevant if this were a common law action brought against REA seeking a damage recovery for the death of Coy or the injuries of Traugott. However, that is not the issue here. The question before us involves the liability of the employer under the Act for the asserted failure to afford each of his employees a safe place to work. This question is wholly separate and apart from the employer's liability for damages in a personal injury action. The statute may well be violated even though no accident or injury occurs. All of the cases cited by appellant on this appeal relate to tort liability; none of them involves the interpretation of the Act, and therefore we find them inapposite.

While the legislative history of the Act does, in part, refer to the general duty clause as a restatement of the employer's common law duty, it has already been noted that this is misleading. See Morey, The General Duty Clause of the Occupational Safety and Health Act of 1970, 86 Harv.L.Rev. 988, 1003 n. 66 (1973). This court has observed that the Act has been called the most revolutionary piece of labor legislation since the National Labor Relations Act. It is remedial and preventative in nature. See Brennan v. Occupational Safety & Health Review Comm'n, (Gerosa, Incorporated), 491 F.2d 1340, 1343 (2d Cir. 1974). In view of the clear purpose of the statute to set new standards of industrial safety, we cannot accept the proposition that common law defenses such as assumption of the risk or contributory negligence will exculpate the employer who is charged with violating the Act.

1. The general duty clause, Section 5(a)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a)(1), provides that each employer:
   shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees . . . . .

Nor are we persuaded that because he summoned an independent contractor for advice, his statutory obligation to provide his employees with a safe place to work is somehow excused. At the same time, we do not consider that the Act imposes an absolute liability upon the employer. The congressional declaration of purpose and policy, 29 U.S.C. § 651(b), states that the Act is designed "to assure *so far as possible* every working man and woman in the Nation safe and healthful working conditions . . . ." (emphasis added). It may well be that some hazards are unpreventable, particularly if an employee's conduct is willfully reckless or so unusual that the employer could not reasonably prevent the existence of the hazard which his behavior creates. See National Realty & Constr. Co. v. Occupational Safety & Health Review Comm'n, 489 F.2d 1257 (D.C. Cir. 1973). This is not such a case.

The circuit room here contained electrical equipment possessing 15,000 volts. The hazard of death or serious injury was obviously recognized since the room was kept locked and was off bounds to employees generally, except the service center manager, and, on the day in question, was also made available to maintenance employees. When the short circuit interfered with the operation of the facility, REA supervisory personnel permitted untrained employees to attempt repairs in this basement room on a wet concrete floor, the day after a three-inch rainfall, without boots, insulated shoes, rubber gloves or rubber mats. These employees were not electricians, and even the independent contractor-electrician had no previous experience in making high voltage repairs. There was no evidence that they had ever been instructed or qualified to handle or repair equipment which had such a potential for mortal injury. This then was not a case of idiosyncratic or unexpected employee behavior. The plant had lost electric power and the repairs were attempted with the full knowledge of REA supervisory personnel in a setting which presented maximum peril and was devoid of rudimentary safety equipment.

The REA contention that it was denied due process because of the lack of specificity of the citation and the complaint is unpersuasive. The citation did state that the place of employment furnished was not free from recognized hazards, which *in vacuo* would hardly be informative. However, it issued after a visit to the plant by compliance officers who interviewed Worden and another REA supervisory official, Handler, as well as Traugott, with respect to the fatal accident. The investigators specifically asked about protective equipment. REA obviously was aware of the precise place of employment, the hazard and the nature of the violation. In any event, the complaint which followed was fully specific. Paragraph VI charged:

On July 31, 1971, respondent REA Express Company violated the provisions of section 5(a)(1) of the Act by failing to furnish its employees working in the basement of its aforesaid Sunnyside Terminal warehouse with employment and a place of employment which was free from recognized hazards that are causing or are likely to cause death or serious physical harm. Respondent REA Express Company permitted its employees to work in close proximity to, and to handle and test live high voltage equipment without using insulated tools and mechanical devices, insulated wearing apparel and other protective safety equipment and devices; permitted unqualified and untrained employees to work in close proximity to, and to handle and test live high voltage equipment, used improper devices to handle and test live high voltage equipment, and failed to follow proper and established methods and procedures in working with high voltage equipment.

The charge provided fair notice of the Secretary's position and complied with the dictates of due process. See Nation-

al Realty & Constr. Co. v. Occupational Safety & Health Review Comm'n, *supra,* 489 F.2d at 1264.

■ The argument that the penalty assessed here ($1000) is a flagrant violation of the Act [2] is unpersuasive. The administrative judge in his decision expressly considered the size of the employer's business as well as the gravity of the violation. We do not deem the fine excessive and, in any event, it does not constitute an abuse of discretion. See Nadiak v. CAB, 305 F.2d 588, 593 (5th Cir. 1962), cert. denied, 372 U.S. 913, 83 S.Ct. 729, 9 L.Ed.2d 722 (1963).

Petition denied.

2. 29 U.S.C. § 666(i) provides:
    The Commission shall have authority to assess all civil penalties provided in this section, giving due consideration to the appropriateness of the penalty with respect to the size of the business of the employer being charged, the gravity of the violation, the good faith of the employer, and the history of previous violations.