**CLARKSON CONSTRUCTION COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Secretary of Labor, Respondents.**

**No. 75–1070.**

United States Court of Appeals, Tenth Circuit.

Argued Sept. 17, 1975.

Decided Jan. 21, 1976.

Rehearing Denied Feb. 18, 1976.

Robert A. Babcock, Margolin & Kirwan, Kansas City, Mo. (G. Steven Ruprecht, Margolin & Kirwan, Kansas City, Mo., on the brief), for petitioner.

Dennis K. Kade, Atty., U. S. Dept. of Labor (William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, Michael H. Levin, Asst. Counsel for App. Litigation, and Allen H. Feldman, Asst. Counsel for App. Litigation, on the brief), for Secretary of Labor.

Before HILL, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Clarkson Construction Company has petitioned for review of an order of the Occupational Safety and Health Review Commission issued against it November 29, 1974. Section 11(a) of the Occupational Safety

and Health Act of 1970 (OSHA) is the applicable procedural and jurisdictional provision (29 U.S.C. Sec. 660(a)).

The order for which review is sought is one which the Administrative Law Judge held to be supported by the weight of the evidence and to establish that the applicable regulation, 29 C.F.R. § 1926.601(b)(4), had been violated. A dump truck had backed up along the shoulder of a highway and had struck and killed a workman. A divided Commission upheld the judge's ruling. The disputed issues which the Commission resolved adversely to Clarkson included:

1. The ruling that Clarkson was responsible for the acts of the truck driver.

2. The holding that the area where the employee was struck constituted a work place.

3. The ruling that ownership and sovereignty at the place of injury were not required.

4. That which held that the death of the employee resulted from failure to furnish a safe work place and failure to warn the employee of the dangers to his life or to prevent foreseeable injuries.

## SANCTIONS AUTHORIZED

Various sanctions are provided by the Act. Thus for a slight violation a notice can be issued. For so-called nonserious violations, the Secretary issues a citation and may propose a penalty of up to $1,000. This is pursuant to 29 U.S.C. Sec. 659(a) and Sec. 666(b). For so-called serious violations, those which create a substantial probability that death or serious physical harm could result, the Secretary must issue a citation and must propose a civil penalty of up to $1,000. This is pursuant to 29 U.S.C. Sec. 666(b), (j). For willful or repeated violations the Secretary may assess a civil penalty of up to $10,000, 29 U.S.C. Sec. 666(a). For willful violations which cause death to an employee, the proceeding is a criminal one and a fine of not more than $10,000 or imprisonment for not more than six months is provided in 29 U.S.C. Sec. 666(e).

## PROCEEDINGS AT BAR

The case at bar is brought pursuant to the serious violation category, 29 U.S.C. Sec. 666(b), (j), whereby the Secretary issues a citation and must propose a civil penalty of up to $1,000. The employer, of course, has the right to challenge the citation or the sanction imposed, and in this instance Clarkson did so.

The hearing is before one of the Administrative Law Judges, who is empowered to affirm, modify or vacate the Secretary's citation or proposed penalty. The administrative review procedures then follow and the matter is finally reviewable by the court of appeals. As we have already noted, the judge and the Commission affirmed the citation of the Secretary, although the chairman of the Commission dissented.

The evidence relied on to support the citation was that Knight's dump truck had an obstructed view of the rear and was not equipped with a reverse signal alarm. It also showed that prior to the accident Knight backed his vehicle over 150 feet on the highway's south shoulder and he did so without an observer at the rear. Knight admitted that he and other drivers had repeatedly backed up without having observers and had done so in the presence of Clarkson's job superintendents. There is evidence from Clarkson's superintendent that drivers had been warned not to back up without observers. He also said that they had not seen anyone do so. Seemingly, however, the Administrative Law Judge accepted Knight's testimony as true. After the incident, Clarkson ordered all trucks to be equipped with reverse signal alarms.

The Commission in affirming the decision of the Administrative Judge ruled that its disposition was controlled by its prior decision in *Secretary of Labor v. Southeast Contractors, Inc.*, OSHRC Docket No. 1445, 1973–74 OSHD ¶ 17,787 (1974).

Chairman Moran, who had dissented in *Southeast Contractors*, dissented here on similar grounds: Knight, the offending truck driver, was not an employee of Clarkson and that an employer relationship was

necessary; that Advance * had the power to control Knight; and that Clarkson did not.

Subsequently, the decision (of the majority) in *Southeast* was versed in a very brief per curiam opinion by the Court of Appeals for the Fifth Circuit. *Southeast Contractors, Inc. v. Dunlop*, 512 F.2d 675 (5th Cir. 1975). The Fifth Circuit rejected the majority reasoning and adopted the conclusion and reasoning of Chairman Moran. The court's opinion said that since Southeast was not the employer, it was not "using" the vehicle within the meaning of the word in 29 C.F.R. Sec. 1926.601(b)(4).[1]

On this appeal Clarkson contends that the enforcement procedures are unconstitutional in that:

1. The civil penalty imposed is penal in nature and not remedial or regulatory in effect;

2. The procedures are contrary to due processes of the Fifth Amendment;

3. There is a violation of the Sixth Amendment by denying Clarkson the speedy and public trial and the right to an impartial jury and the right to confront and cross-examine witnesses; or

4. In the alternative, it is urged that the procedure, if civil, is a violation of the Seventh Amendment.

Clarkson's non-constitutional law contentions are:

5. That it was not an employer "using" motor vehicle equipment within the terms of intent of 29 C.F.R. Sec. 1926.601(b)(4);

6. That the violation did not occur on a work site of Clarkson; that it took place instead on a public road outside the limits of the work site;

7. That the penalty was arbitrary and capricious.

## I.

### THE CONSTITUTIONAL ISSUES

■ A. We disagree with the contention of Clarkson that the civil penalty assessed against it under 29 U.S.C. Sec. 666(b) is a penal sanction imposed without those procedures demanded in the Sixth Amendment. The Fifth Circuit in the case referred to in *Southeast Contractors, supra,* namely *Atlas Roofing Co. v. OSHRC*, 518 F.2d 990, 1000–11 (5th Cir. 1975), in an opinion by Chief Judge Brown, thoroughly considered all of these arguments and issues and reached the conclusion that the penalty in question was civil and valid. *Accord : Frank Irey, Jr., Inc. v. OSHRC*, 519 F.2d 1200 (3rd Cir. 1974), *aff'd en banc*, 519 F.2d 1215 (1975).

■ B. Nor do we consider the sanction considered as a civil one to have been in violation of the *Seventh* Amendment right to a jury trial. This is not an action at common law within the meaning of the Seventh Amendment and hence no jury trial right arises. *See* the Supreme Court's decision in *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974), wherein the Court said:

The Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication and would substantially in-

---

* Advance is a sub-contractor which brought Knight, the truck driver, into the picture.

1. The issue was not considered in any depth. It is contained in the paragraph below:

   It is unnecessary that we decide the constitutionality of the Occupational Safety and Health Act of 1970 and its enforcement procedures established by sections 5, 6, 8, 9, 10, 11, 12, and 17, which matter is also pending and under submission before another panel of this Court in *Atlas Roofing Company, Inc. v. Secretary of Labor* No. 73–2249 [5 Cir., 518 F.2d 990]. We are in agreement with the well-reasoned dissent of Chairman Moran of the Occupational Safety and Health Review Commission in this matter, and especially with that portion pertaining to the general rule that a contractor is not responsible for the acts of his subcontractors or their employees; accordingly, that the tractor driver was not an employee of respondent. Therefore, respondent was not using the motor vehicle involved in this case at the time of the accident within the meaning of 29 C.F.R. § 1926.601(b)(4), and the majority ruling of the Commission is erroneous.
   512 F.2d at 675.

terfere with the [Agency's] role in the statutory scheme.

It was within the power of Congress to choose an administrative process for the enforcement of the safe and healthful working conditions objective of the Act and it is not for us to say that Congress exercised its judgment improperly. *See Atlas Roofing Co., supra*; *Frank Irey, Jr., supra*, and *Beall Construction Co. v. OSHRC and Brennan*, 507 F.2d 1041 (8th Cir. 1974).

■ C. Nor do we agree with Clarkson's contention that the statutory program chills its due process right to judicial review of the citation which the Secretary enters, whereby the Secretary proposes abatement requirements and proposes monetary penalties and does so *ex parte*. Clarkson also complained that the Secretary assesses per-day non-abatement penalties if in his view the employer was not contesting the citation in good faith and further in authorizing the Commission to increase proposed penalties upon review if an employer contests. The answer to the first contention is that the employer does have the opportunity to contest the Secretary's action before the same becomes final. As we view it, this satisfies due process. *See, e. g., Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The other side of the argument is that swift and effective enforcement is essential to efficient enforcement. Due process does not require that there be a right to interminably litigate the issue (before, during and after). Rather, Congress may provide for a judicial review which demands quick appeal. *See Lichter v. United States*, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948); *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

■ ·D. The answer to the contention that the provision for assessment of per-day non-abatement penalties where the employer is not contesting in good faith is that this again is an effort to eliminate meritless

review. The action taken is always subject to review, reversal and a stay where the same is justified. So, on its face, it is not invalid. As applied, it could be.

■ F. We also disagree with the argument that it is unconstitutional for the Commission to increase the penalties. Here again there remains a right to review. The imposition of an increased or enlarged penalty is not unconstitutional so long as the scheme is free of vindictiveness. *See Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and *see also Chaffin v. Stynchcombe*, 412 U.S. 17, 29, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); *Colten v. Kentucky*, 407 U.S. 104, 116, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *North Carolina v. Pearce*, 395 U.S. 711, 723, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The increased penalty can be imposed only by the Commission, not the Secretary, and it is subject to judicial review. Thus the possibility of vindictiveness is negligible.

■ G. Nor are we impressed with the contention that OSHA unconstitutionally delegates judicial power to the Secretary. This has been raised in other courts and has been uniformly rejected. *Lake Butler Apparel Co. v. Secretary of Labor*, 519 F.2d 84 (5th Cir. 1975); *McLean Trucking Co. v. OSHRC and Secretary of Labor*, 503 F.2d 8 (4th Cir. 1974); *Beall Construction Co. v. OSHRC and Brennan*, 507 F.2d 1041 (8th Cir. 1974).[2]

## II.

The provision with which we now deal is the regulation promulgated by the Secretary of Labor which raises the issue whether the term "use" implies traditional employer-employee relationships. The wording of the regulation is:

No employer shall use any motor vehicle equipment having an obstructed view to the rear unless:

(i) The vehicle has a reverse signal alarm audible above the surrounding noise level or;

---

**2.** *See also* Note, Due Process and Employee Safety: Conflict in OSHA Enforcement Procedures, 84 Yale L.J. 1380, 1383–84 (1975). The

Note contains a good overview of Due Process issues in the Act.

(ii) The vehicle is backed up only when an observer signals that it is safe to do so. 29 C.F.R. Sec. 1926.601(b)(4).

Clarkson maintains that it was not "using" the vehicle within the meaning of the regulation, but its argument does not distinguish between the terms "use" and "operation."

In the Fifth Circuit's decision, *Southeast Contractors, Inc. v. Dunlop, supra,* the court accepted this position of Clarkson. In reaching its conclusion the court treated the term "use" as if it were a synonym of "operating." The result was that the common law meaning of the employee-employer relationship was in effect made a part of the regulation.

We are unable to overlook the fact that the truck driver who ran over and killed the employee was serving the objects and purposes of Clarkson. By removing the excavated material, Clarkson's purposes in fulfilling its contract were being furthered.

██ Nor are we here dealing with vicarious liability of the employer to third persons in tort. Instead, we are concerned with giving meaning to an Act of Congress which was designed to require the employer to provide a safe work place for all persons working on the premises. With that in mind, common law definitions ought not to be dispositive in interpreting the Act. *Cf. Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255 (4th Cir. 1974).

██ Ordinarily an administrative agency's interpretation of the legislation under which it operates is entitled to great weight. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975). We have held that the Secretary's interpretation of the Act in question should be entitled to great weight and indeed have further held that such interpretations are controlling even though there may

be another interpretation which is equally reasonable. *See Brennan v. Occupational Safety and Health Review Commission and Kesler and Sons Const'n Co.,* 513 F.2d 553, 554 (10th Cir. 1975). In accord with this are *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Board of Directors, Forbes Fed'l Credit Union v. Nat'l Credit Union Admin.,* 477 F.2d 777, 784 (10th Cir. 1973), *cert. denied,* 414 U.S. 924, 94 S.Ct. 233, 38 L.Ed.2d 158 (1973); *Brennan v. Southern Contractors Service and Occupational Safety and Health Review Commission,* 492 F.2d 498, 501 (5th Cir. 1974). *See California Stevedore & Ballast Co. v. Occupational Safety and Health Review Commission,* 517 F.2d 986 (9th Cir. 1975).

We consider it noteworthy also that the Commission agreed with the Secretary's interpretation in the *Southeast Contractors* case. We regard this fact as being supportive of the Secretary's interpretation. Where two administrative bodies having expertise arrive at similar interpretations, a court should be slow to impose its own interpretation. *See The Budd Co. v. Occupational Safety and Health Review Commission,* 513 F.2d 201 (3d Cir. 1975).[3]

██ The Supreme Court has refused to use the traditional approach in defining employee in the context of other statutes. *Goldberg v. Whitaker House Cooperative, Inc.,* 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961) (Fair Labor Standards Act); *Walling v. Portland Terminal Company,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947) (FLSA); *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (FLSA); *N.L.R.B. v. Hearst Publications, Inc.,* 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (National Labor Relations Act). Moreover, instead of looking at narrow common law definitions, the Supreme Court has looked to the purpose of the Act involved in deciding what

---

**3.** The reasonableness of the agencies' interpretation of "use" is further buttressed by similar interpretations in other contexts. *E. g., Maryland Casualty Ins. Co. v. Marshbank,* 226 F.2d 637 (3d Cir. 1955) (insurance law); *County of Wyoming v. Erie Lackawanna Railway Company,* 360 F.Supp. 1212, 1219 (W.D.N.Y.1973) (insurance law); *American Casualty Co. v. Windham,* 26 F.Supp. 261 (M.D.Ga.1939), *aff'd,* 107 F.2d 88 (5th Cir. 1939) (insurance law).

the meaning of employee should be and has also held that it is inappropriate to use varying state common law definitions of an employee and employer in construing federal legislation. *See United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). It thus follows that the way to determine the nature of the employment relationship is to look to the purpose and policy of the statute.[4]

■ The statute with which we are here dealing has a broad remedial purpose which is protection of the worker from industrial injury. It has been said in *Secretary v. James E. Roberts Co. & Soule Steel Co.*, 7 OSAHRC 1005, 1008 (1974) (Commissioner Cleary, dissenting) that: "In order to accomplish this purpose, it is necessary to look to an employer who controls the working environment. Whether the employer controlling work environment (sic) is also the employer for wage or tort purposes should not be a governing factor."

■ So, then, even though the employee in question was an employee of Advance, he was nevertheless under the direction and, more important, control of Clarkson, the general contractor. The latter was in a much better position to see to it that the required safety devices were installed than was Advance. Moreover, Clarkson was in a better position to provide observers to direct the movement, especially when such measures would be of benefit to Clarkson employees.

\* \* \* \* \* \*

■ The amended citation charged that the alleged violation took place at a work place under Clarkson's ownership, operation, or control. Clarkson's alternative contention is that since the accident occurred on the shoulder of the highway which is open to the public, the accident did not occur at a work site under its control and that the citation did not state a claim. In *REA Express, Inc. v. Brennan*, 495 F.2d 822 (2d Cir. 1974), the Second Circuit dealt with a similar contention. It rejected, however, REA's argument that since the fatal accident took place in a circuit room which was off limits to most of its employees, the accident did not occur at a place of employment. The court said:

> The fact that it was not open to all employees, but only certain authorized personnel, does not in our view render it immune from the coverage of the statute. \* \* \* To exclude it from the statute would exonerate the employer from providing occupational protection and safety in the most hazardous areas of its plant . . .

495 F.2d at 825.

Similarly, in the case at bar, whether Clarkson employees were walking in the actual construction area or on the nearby shoulder, they needed the protection of the safety device. To draw narrow boundaries which would have the effect of restricting the area of protection would effectively defeat the clear purpose of the statute. *Cf. REA Express, Inc., supra*, at 825, and *see also Gilles & Cotting, supra*, together with *National Realty and Construction Company, Inc. v. Occupational Safety and Health Review Commission*, 160 U.S.App.D.C. 133, 489 F.2d 1257, 1266 n.36 (1973). The important aspect is that the truck was being used to further the project. The work was being performed at the site of the project. We fail to see the logic in restricting the work area in some artificial manner, as a result of which the employer escapes responsibility for protecting an area and does so on the specious basis that it is publicly owned and used, notwithstanding that the employee is also using it.

The Order is affirmed.

---

4. *Cf.* 29 C.F.R. Sec. 1977.5, which provides that for purposes of Sec. 11(c) of the Act (29 U.S.C. Sec. 660(c)) (the antidiscrimination clause) "employee" has a broad definition. The regulation states in part that:

> . . . the broad remedial nature of this legislation demonstrates a clear congressional intent that the existence of an employment relationship, for purposes of section 11(c), is to be based upon economic realities rather than upon common law doctrines and concepts.

SETH, Circuit Judge (dissenting):

There is no indication that the Occupational Safety and Health Act of 1970 was intended to override the established employer-employee relationships and contractor-subcontractor relationships which have developed over the years to allocate duties and liability among the many parties present on any construction site. Also it serves no useful purpose to change these relationships, and to create a whole new body of law or set of rules which pertain only to OSHA.

The subcontractor here had control over the truck and driver concerned, and over safety equipment for such trucks. The prime contractor did not have such control. The accident furthermore was off the worksite and apparently along a public highway.

The fact that the enforcement agency selects a particular contractor on the job does not serve to fix the liability. Established legal relationships should be recognized in order that the stated purposes of the Act can be accomplished. This is the basic and important factor to be considered, and this factor can be best recognized again if the duties of several employers are imposed in accordance with the law and rules which govern all other aspects of work at the site. There is no point in setting up yet another structure of relationships totally unrelated to others as this serves only to retard the effective implementation of the Act.

Thus I must respectfully dissent from the majority opinion. The position expressed by the Chairman of the Commission in this case is to me the proper one to accomplish the purposes of the Act. *See also Southeast Contractors, Inc. v. Dunlop*, 512 F.2d 675 (5th Cir.).