HOLLOWAY, Circuit Judge,
dissenting:
I respectfully dissent.
I am convinced that the undisputed findings of basic, subsidiary facts by the Administrative Law Judge are amply supported and require a ruling sustaining the citation and penalty against the respondent Cities Service Oil Company. More specifically, I am persuaded that the reasoning of Commissioner Cleary’s partial dissent is sound and I will only briefly outline the reasons which lead me to agree with his views.
The lead opinion of Chairman Bamako primarily rejects the citation against respondent Cities Service on the ground that it could not reasonably have foreseen that the independent contractor Fry’s would perform the work on the tank in an unsafe manner and give rise to the need for a rescue attempt. Reliance is placed on prior successful performance of the work by Thach a number of times. The lead opinion concludes that it would be an unreasonable burden for the employer to be required to anticipate every violation such as Thach’s entry of the tank under conditions which constituted a § 5(a)(1) violation itself.
The basic facts are undisputed and need not be repeated. The compelling essentials are that the tragedy concerns a highly lethal substance presenting a recognized hazard, as Chairman Bamako’s lead opinion notes (C.D. 5); that respondent Cities’ employees were called on to assist Thach in his work; that although not in the tank, Cities’ employees were working closely with Thach, in an arrangement which the Administrative Law Judge described as the “complete interlocking of Cities Service employees’ activities with that of the Respondent Fry’s employee,” based on detailed testimony describing their work. (Administrative Law Judge’s Decision, 13-14; see also Commissioner Cleary’s opinion at pp. 21-24 of the Commissioners’ opinions). Commissioner Cleary concluded (id. at 24):
Cities Service knew that its employees were going to assist the Fry’s employee with the tank cleaning procedure. It knew that the Fry’s employee had to enter the tank to replace the anodes. It knew that hydrogen sulfide gas is a recognized hazard in the Stoltenberg area of Kansas. It knew or should have known that employees who are working together as a team, regardless of prior instruction concerning entry into tanks, will set aside a specified course of conduct and react humanly to save the life of a fellow worker. See Akron Brick & Block Co., No. 4859, BNA 3 OSHC 1976, CCH OSHD para. 20,302 (1976). Furthermore, the record reveals that both qualitative and quantitative tests for hydrogen sulfide could have been performed easily by the employees on the worksite had Cities Service provided the equipment and a minimal instruction period. Indeed, since the time of the accident, Cities Service has initiated a new procedure that requires the testing of all confined spaces to be entered on its jobsite regardless of whose employees are involved. . . . Finally, it failed to provide appropriate safety equipment that, admittedly, would have enabled the Cities Service employees to rescue their fellow worker with a minimum of danger to themselves.
*133 On this record I must agree with Commissioner Cleary’s conclusion that overwhelming evidence demonstrates that respondent Cities failed to render its workplace free of the recognized hazard, and that there was a demonstrated availability of feasible measures that would have significantly reduced the likelihood of the accident.
In view of the recognized hydrogen sulfide hazard and the close working relationship of the employees of Cities with Thach, the danger to all of them and of an instinctive attempt of a rescue was real, I must agree with the Administrative Law Judge and Commissioner Cleary’s view that a general duty violation occurred, giving the Act an interpretation in accord with its broad remedial purpose of protection from industrial injury. Clarkson Construction Co. v. Occupational Safety and Health Review Commission, 531 F.2d 451, 458 (10th Cir.).