AIR COURIER CONFERENCE OF AMERICA/INTERNATIONAL COMMITTEE, International Express Carriers Conference, DHL Airways, Inc., Dworkin–Cosell Interair Courier Services, Inc., Federal Express Corp., Intertrade Courier International, Inc., TNT Skypak, Inc., and UPS Air Forwarding, Inc., Plaintiffs,

v.

UNITED STATES POSTAL SERVICE, Defendant.

Civ. A. No. 89–557–JRR.

United States District Court, D. Delaware.

April 18, 1991.

Arthur G. Connolly, Jr. and Arthur G. Connolly, III, Connolly Bove, Lodge & Hutz, Wilmington, Del., Robert L. Kendall, Jr., John E. McKeever and Susan Ginsburg, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiffs.

William C. Carpenter, U.S. Atty., D. Del., and Kent Jordan, Asst. U.S. Atty., Wilmington, Del., William T. Alvis and Eric P. Koetting, U.S. Postal Service, Washington, D.C., for defendant.

ROTH, District Judge.

I am prepared to rule on the motions at this time.

The issue that has been presented by the motions is: Was the United States Postal Service ("Postal Service") within its statutory authority under 39 U.S.C. § 407(a) to establish and change its rates for On–Demand Express Mail International Service, or was the Postal Service required to submit such desired rate changes to the United States Postal Rate Commission ("Commission") for review and recommendations, pursuant to 39 U.S.C. §§ 3621 and 3622?

The Postal Service and Commission are the two agencies that administer the nation's postal system as established under the Postal Reorganization Act of 1970 which is codified as Title 39 of the United States Code. As the administering agencies under this enabling legislation, the interpretation of the Act by these agencies is due deference by the Court as long as the interpretation is not contrary to the express terms of the statute or a clear indication of legislative intent.

Both the Postal Service and Commission have interpreted the Act to provide that the Postal Service may establish rates for international mail without submitting the desired rate changes to the Commission pursuant to §§ 3621 and 3622 of the Act. Both agencies have found that the Commission does not have jurisdiction over the setting of international mail rates. This Court must afford deference to this interpretation of the Act by these agencies since it is not contradicted by clear legislative intent to the contrary.

For these reasons, the defendant Postal Service's motion to dismiss Count 1 of the complaint must be granted, and plaintiffs' motion for summary judgment in their favor on Count 1 must be denied. Count 1 demands that this Court enjoin defendant from continuing with the On–Demand Express Mail International Service at the rate announced on April 25, 1989, until defendant receives a recommendation decision from the Commission pursuant to 39 U.S.C. §§ 3621 through 3641. In contrast, Count 2 of the complaint, which is not addressed by the present motions of the parties, requests this Court to decide whether the challenged rate is appropriate and non-discriminatory.

The Postal Reorganization Act of 1970 created the Postal Service as an independent establishment within the executive branch of the federal government. The Act also created the Postal Rate Commission as a second regulatory body within the postal system. The Commission's role, at least in regard to the setting of rates for domestic mail, is essentially to provide a check on the aggressive financial management of the Postal Service by the Postmaster General and Board of Governors who are charged under the Act with the duty of creating and maintaining a financially self-sustaining Postal Service.

Congress sought through the Reorganization Act to remove a large measure of the political influence and bureaucracy that had severely inhibited the efficient administration of the nation's postal system by establishing the Postal Service as a more aggressive and effective agency for managing the postal system than was the former Post Office Department before the Reorganization Act. Section 3621 of the Act dictates that the Postal Service should be financially self-sustaining, rather than dependent to a great extent upon Congressional appropriations as had the Post Office Department been before the Reorganization. The Act removed congressional oversight of rate setting as part of this streamlining of the postal system. In place of Congress' former role in reviewing the details of the Postal Service's rate setting, the Act established the Postal Rate Commission to provide a check on possibly over-aggressive financial management by the Postal Service. *See, e.g., National Ass'n of Greeting Card Publishers v. United States Postal Serv.,* 462 U.S. 810, 822–23, 103 S.Ct. 2717, 2726, 77 L.Ed.2d 195 (1983).

Under § 3622, the Commission makes recommendations to the Postal Service of rate changes that are warranted in view of the costs of each type of mail service that the Postal Service provides. At least in regard to domestic rate-setting, the Commission thus provides a check against the danger that the Postal Service might succumb to the temptation of solving their revenue short-falls by raising the rates disproportionately for those classes of mail over which the Postal Service enjoys a statutory monopoly. The Commission provides a check against the similar danger that the Postal Service might succumb to the temptation to undertake predatory pricing for domestic mail classes for which the Postal Service must compete with private courier services. *See, e.g., National Ass'n of Greeting Card Publishers,* 462 U.S. at 823–24, 103 S.Ct. at 2726–27.

This Court must give deference to the interpretation of the Act's provisions by the Postal Service and the Commission, as the agencies charged with administration of the postal system under the Act, unless their interpretation is contrary to the express terms of the Act or would frustrate Congress' intended objectives of the legislation. *See, e.g., National Ass'n of Greeting Card Publishers,* 462 U.S. at 820–21, 103 S.Ct. at 2725; *Newsweek, Inc.*

*v. United States Postal Serv.*, 663 F.2d 1186, 1196–97 (2d Cir.1981). This due deference is underscored in this case first by the fact that officials of the Postal Department participated in the drafting of the Reorganization Act, *see Miller v. Youakim*, 440 U.S. 125, 144, 99 S.Ct. 957, 968, 59 L.Ed.2d 194 (1979), and, second, by the unusual circumstance of having two agencies with expertise under the Act that have expressed the same interpretation regarding the scope of § 407(a). *See Clarkson Constr. Co. v. Occupational Safety and Health Review Comm'n*, 531 F.2d 451, 457 (10th Cir.1976).

■ Both the Postal Service and the Commission interpret the Act as permitting the Postal Service to set rates for international mail pursuant to § 407(a) of the Act, without utilizing the Commission's review and recommendation procedures set out in §§ 3621 and 3622.

Section 407(a) set forth the Postal Service's authority to enter into international postal agreements and set rates for international mail:

The Postal Service, with the consent of the President, may negotiate and conclude postal treaties and conventions, and may establish the rates of postage or other charges on mail matter conveyed between the United States and other countries. The decisions of the Postal Service construing or interpreting the provisions of any treaty or convention which has been or may be negotiated and concluded shall, if approved by the President, be conclusive upon all officers of the Government of the United States.

39 U.S.C. § 407(a). Section 3621 addresses the Postal Service's authority to establish rates and classes for the mails:

Except as otherwise provided, the Governors [of the Postal Service] are authorized to establish reasonable and equitable classes of mail and reasonable and equitable rates of postage and fees for postal services in accordance with the provisions of this chapter [of Title 39, comprised of §§ 3601–3685].

39 U.S.C. § 3621. Section 3622(a) describes the procedure by which the Postal Service

shall request the Commission to provide recommendations for changes in rates or classes of the mails, and § 3622(b) describes the factors the Commission should consider in formulating its recommendations.

The Postal Service interprets these sections of the Act as providing that the Postal Service may set and change rates for international mail under § 407(a), without requesting a recommendation regarding such rates from the Commission pursuant to §§ 3621 and 3622. The Postal Service's position is that this interpretation of the Act is evident from a plain-meaning reading of the terms of §§ 407(a) and 3621. Section 3621's phrase "except as otherwise provided" is viewed by the Postal Service to embrace any pertinent provision within the Act concerning rate-setting authority, and thus as excepting the Postal Service's international rate-making authority under § 407(a) from the Commission review procedures set out in §§ 3601 through 3685, which comprise the "chapter" referred to in § 3621.

The Commission has interpreted the Act in the same manner as the Postal Service. The Commission has stated that:

... Rates of postage and other charges on mail matter conveyed between the United States and other countries are determined through postal treaties or conventions negotiated by the Service with the consent of the President. These services are thus beyond the Commission's jurisdiction. *See* 39 U.S.C. § 407.

Postal Rate Commission Opinion and Recommended Decision, Docket No. R76–1, App. F at 17 (of record in this case as Docket Item 15, at App. 50).

In another Opinion and Recommended Decision, the Commission distinguished between mail services for the military, which are part of the domestic postal system, and international mail, which the Commission deemed to be governed by § 407(a). The Commission described § 407(a) as a provision which "requires the approval of the President for agreements negotiated by the Postal Service between the U.S. and other countries, and which states that the Postal

Service may 'establish the rates of postage or other charges on mail matter conveyed between the United States and other countries.'" Postal Rate Commission Opinion and Recommended Decision, Docket No. R80–1, App. F. at 6 (Docket Item 15, at App. 53). The Commission observed that international mail, as governed by § 407(a), is not subject to the Commission's overview of purely regulatory rate-setting matters, stating that: "Postal rates and services as between the United States and foreign nations have a foreign affairs dimension which requires Presidential review; they are thus not purely regulatory questions." *Id.* at 7 (citing case).

This Court finds that the interpretations of §§ 407(a) and 3621 by the Postal Service and Commission must be accorded full deference because they are not contrary to the express terms of the statute and do not frustrate any clearly explicable intent of Congress.

■ Plaintiffs contend that the phrase "except as otherwise provided" in § 3621 refers only to other provisions within Chapter 36 of the Act. However, such a reading is contrary to the plainly broader wording of that phrase. As the Court in *United Parcel Serv. v. United States Postal Serv.,* 455 F.Supp. 857 (E.D.Pa.1978), *aff'd* 604 F.2d 1370 (3d Cir.1979), observed it is "reasonable to assume that in expressing its intent through the Postal Reorganization Act, Congress sought clarity, rather than obfuscation and, unless the contrary appears, that Congress therefore used statutory words in their ordinary and usual sense and with the meaning commonly attributed to them." *Id.* at 863 (citing case). Similarly, as the Supreme Court has observed, we do not construe statutory phrases in isolation, but rather read statutes as a whole. *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984). This is particularly true when examining a comprehensive piece of legislation such as the Reorganization Act.

The plaintiffs' constrained interpretation of the exception clause in § 3621 is also not mandated by any clearly explicable legislative intent. Plaintiffs argue that an early version of the Reorganization Act in the House of Representatives included a specific exception from the Commission's role in reviewing rate changes that excluded "international rates and fees, which will continue to be set pursuant to international agreements." H.R.Rep. No. 1104, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 3649, 3693.

Plaintiffs suggest that the fact that this very specific exception from an earlier version of the Act was omitted from the final form of the Reorganization Act indicates a Congressional intent not to except international mail rates from the purview of the Commission. This tenuous argument regarding legislative intent fails in view of the plain and broadly worded exception stated at the outset of § 3621. While no legislative commentary exists to demonstrate definitively why Congress dropped this earlier specific exception from the text of the Act, one could easily infer that it was dropped because it would be surplusage in view of the broader, simpler exception stated in § 3621 as formulated after later consideration of the proposed Act by the Senate and Conference Committee.

Plaintiffs have offered other convoluted arguments regarding legislative intent. Defendants have responded with their own detailed observations of the structural interrelations of various sections of the Reorganization Act. However, plaintiffs have offered no sufficiently clear evidence of legislative intent that contradicts the plain-reading interpretation of §§ 407(a) and 3621 as advanced by the Postal Service and Commission.

The position of the Postal Service and Commission that the Postal Service may set rates for international mail without submitting such rate considerations to the Commission is also supported by the characteristics of the international agreements entered into pursuant to § 407(a) and under which the international mail service is provided. The Universal Postal Union Convention, July 10, 1964, 27 U.S.T. 345, T.I.A.S. No. 8231, governs international mail services between the United States Postal Service and any other nations' postal ad-

ministrations that are signatories to that Convention. The provisions of the Convention, and the international agreements entered into in accordance with the Convention, provide a detailed context and a number of significant factors that influence and constrain the Postal Service's setting of possible rates for international mail. This constraining context is analogous to the constraint that the Postal Rate Commission places on the Postal Service's setting of domestic mail rates.

Under the Postal Union Convention, the Postal Service does not itself provide door-to-door delivery for its express mail international services in the way private international couriers deliver items for their customers, or in the manner of continuous control over an item that the Postal Service exercises for deliveries of domestic mail. Instead, the Convention creates a two-step delivery process for international mail that maintains a clear distinction between the country of origin and the country of destination for a posted document. Article 29 of the Convention provides for express mail service such as that at issue in this litigation. The terms of this Article contemplate that the Postal Service will deliver its international express mail items into the hands of the postal administration of the country of destination, which will effect final delivery within that country. Among the terms of Article 29 are the following:

3. When express delivery involves special demands on the administration of destination as regards either the situation of the addressee's address or the day or time of arrival at the office of destination, the delivery of the item and the possible collection of an additional charge shall be governed by the provisions relating to items of the same kind in the internal service.

4. Express items on which the total amount of the charges payable in advance has not been completely paid shall be delivered as ordinary mail unless they have been treated as express by the office of origin. In the latter event a charge shall be collected on them in accordance with Article 27 [regarding collection for underpaid correspondence].

5. Administrations may confine themselves to making only one attempt at express delivery. If that attempt fails, the item may be treated as an ordinary item.

6. If the regulations of the administrations of destination permit, addressees may ask the delivery office to deliver to them by express immediately on arrival items which are intended for them. In that case the administration of destination shall be authorized to collect, on delivery, that charge that applies in its internal service.

27 U.S.T. at 391.

In addition to this two-step process of delivery and handling of express items under Article 29, and its impact and constraints on participating postal administrations' possible rate-settings, the provisions of Article 44 of the Convention have similar significance concerning the scope of service that can be provided for international mail by the United States Postal Service. Article 44 dictates that the participating postal administrations shall limit their liability so that they will be liable only for the loss of a registered item, and will not be liable for the late arrival of time-sensitive documents. This is significantly different from the services provided by private international couriers, who hold themselves liable for late arrivals as well as lost items. 27 U.S.T. at 396. *See* Note, *Private International Couriers: A Challenge to the West Germany Postal Monopoly and EEC Law,* 19 Cornell Int'l L.J. 35, 41, n. 31 (1986) (discussing differences between liability of postal administrations and private couriers). Such limitations on liability through international agreements have significant effects on the rate-setting considerations of the postal administrations.

The United States Postal Service has entered into numerous bilateral executive agreements with signatories of the Convention regarding international express mail. The terms of these individual agreements are consistent with one another and accord with the provisions of the Convention. An important provision in each of these agreements concerns periodic compensation be-

tween the two postal administrations for imbalances that may be experienced by one of the administrations in the surface handling and delivery costs it incurs as a destination country for international mail. Typical of this type of provision is Article 15 of the International Express Mail Agreement between the United States Postal Service and the Postal Administration of the United Kingdom of Great Britain and Northern Ireland, Nov. 6 & Dec. 14, 1978, 30 U.S.T. 3357, T.I.A. No. 9395, which states:

1. At the end of each year of this Agreement, the administration which has received a larger quantity of International Express Mail than it has sent during that year shall have the right to collect from the other administration, as compensation, an imbalance charge, for the surface handling and delivery costs it has incurred for each additional item received.

2. Each administration shall establish an imbalance charge per item which shall correspond to the costs of services.

3. Modifications of the imbalance charge may be made as follows:

a. Each administration may increase its imbalance charge when such an increase is necessary due to an increase in the costs of services.

b. To be applicable, any such modification of the imbalance charge must:

(i) be communicated to the other administration at least three months in advance;

(ii) remain in force for at least one year;

4. No imbalance charge shall be collected if the difference in the number of items exchanged is less than one thousand.

30 U.S.T. at 3365–66.

A cursory review of existing agreements shows that there are similar provisions in the Postal Service's international agreements with the postal administrations of Canada, Switzerland, the Federal Republic of Germany, France, and Liberia.

Such provisions for imbalance charges between administrations demonstrates the degree to which the United States Postal Service's setting of rates for international express mail is undertaken within the detailed context of international agreements entered into pursuant to § 407(a) of the Reorganization Act. Indeed, in announcing the rate decrease for the On–Demand Express Mail International Service that is the subject of this litigation, the Postal Service stated that the rate change was "facilitated by foreign postal administrations in agreements which significantly lower the imbalance charges associated with this category of mail." Notice of Change in Express Mail International Service Rates, 54 Fed. Reg. 17852 (1989) (effective Apr. 25, 1989). Moreover, the Postal Service's agreements also include provisions such as Article 18 of the agreement with the United Kingdom, which states: "the administrations may collect only the rates, charges and fees established under this Agreement." 30 U.S.T. at 3367.

As this litigation itself demonstrates, the Postal Service faces other checks on its setting of international mail rates besides the detailed rate and cost-sharing provisions of the international agreements. Under the Reorganization Act, if the Postal Service sets a rate for international mail under § 407(a) that private couriers or postal customers believe is unreasonable or discriminatory, they may file suit in Federal District Court pursuant to § 409(a). The Postal Service is bound under § 403(a) of the Reorganization Act to "provide adequate and efficient postal services at fair and reasonable rates and fees." 39 U.S.C. § 403(a). It is similarly bound under § 403(c) as follows:

In providing services and in establishing classifications, rates, and fees under this title, the Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preference to any such user.

39 U.S.C. § 403(c). If this provision is violated, a remedy is available in this Court, as has been sought here in Count 2.

For the reasons stated, we find that the Postal Service was within its authority to

establish and change rates for On–Demand Express Mail International Service pursuant to § 407(a), without submitting the desired rate changes to the Postal Rate Commission for review and recommendation.

Plaintiffs' motion for summary judgment on Count 1 of the complaint is hereby denied, and defendant's motion to dismiss Count 1 is granted. I will issue an appropriate order.