**DUN–PAR ENGINEERED FORM COMPANY, Petitioner,**

v.

**Ray V. MARSHALL, Secretary of Labor, and Occupational Safety and Health Review Commission, Respondents.**

No. 80–1401.

United States Court of Appeals, Tenth Circuit.

April 21, 1982.

Thomas M. Moore of Gould & Moore, Kansas City, Mo. (William E. Simmons of Simmons & Morris, Kansas City, Mo., with him on the briefs), for petitioner.

Ann D. Nachbar, Atty., Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., Allen H. Feldman, Counsel for Appellate Litigation, Charles I. Hadden, Asst. Counsel for Appellate Litigation, and Eric W. Cloud, Atty., U. S. Dept. of Labor, Washington, D. C., with her on the brief), for respondents.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Dun-Par Engineered Form Company appeals from an order of the Occupational Safety and Health Review Commission (OSHRC) assessing a penalty for a repeated violation of regulations promulgated pursuant to the Occupational Safety and Health Act (OSHA), 29 U.S.C. §§ 651–678. Dun-Par is a specialty subcontractor that erects and dismantles forms for the construction of concrete floors. During an inspection of a multi-employer construction site on which Dun-Par was working, an OSHA compliance officer issued Dun-Par a citation for violating the safety standard in 29 C.F.R. § 1926.500(d)(1), which requires that "[e]very open-sided floor or platform 6 feet or more above adjacent floor or ground level shall be guarded by a standard railing . . . ." The OSHA compliance officer determined that Dun-Par employees "were exposed to the hazards of unguarded open sides of the floors with [a] drop of approximately 12 feet and 24 feet." Record, vol. 3 at 2. The violations were characterized as "repeated" pursuant to 29 U.S.C. § 666(a), because Dun-Par previously had been cited under 29 C.F.R. § 1926.500(d)(1) for similar conditions. A penalty of $1600 was proposed. In a hearing before an Administrative Law Judge (ALJ), the ALJ affirmed the citation and assessed a penalty of $1600. Dun-Par then petitioned the Commission

for review, whereupon the OSHRC affirmed the ALJ's decision with respect to a repeated violation of the standards for failure to install guardrails along the perimeter edges of the second level of the building (12-foot drop), but vacated the ALJ's findings with respect to the third floor level (24-foot drop), because it determined that this floor was a roof area not covered by the guardrail standard. Accordingly, the Commission reduced the penalty to $800.

█ On appeal, Dun-Par argues that the evidence does not support the Commission's findings that Dun-Par violated the guardrail standard, or that this violation was "repeated" within the meaning of the statute. In reviewing Dun-Par's allegations, the question before this court is whether the Commission's findings are supported by substantial evidence. 29 U.S.C. § 660(a); *Kent Nowlin Construction Co. v. OSHRC*, 648 F.2d 1278, 1279 (10th Cir. 1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kent Nowlin Construction Co. v. OSHRC*, 648 F.2d at 1279 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

I. Guardrail Standards Violation

The Commission determined that Dun-Par employees were exposed to hazards because they were required to work near the perimeter of the second floor, approximately 12 feet above the ground level, which had unprotected open sides. The Commission further determined that Dun-Par's supervisory personnel either knew of or could have detected the absence of guardrails. Dun-Par argues that the Commission erroneously found a violation, because as a subcontractor on a multi-employer worksite, it neither created nor controlled the hazard to which its employees allegedly were exposed. Furthermore, Dun-Par argues that it took realistic measures and made reasonable efforts to protect its employees as an alternative to literal compliance with the standard. In essence, Dun-Par relies on the defense articulated by the Commission in *Anning-*

*Johnson Co.*, [1975–1976] OSHD (CCH) ¶ 20,690:

> Once a cited construction subcontractor has established that it neither created nor controlled the hazardous condition, it may affirmatively defend against the Secretary's charge by showing either (a) that its employees who were or may have been exposed to the hazard were protected by means of realistic measures taken as an alternative to literal compliance with the cited standard, or (b) that it did not have nor with the exercise of reasonable diligence could have had notice that the condition was hazardous. [notes omitted]

*Id.* at 24,783–84.

■■ In an effort to avail itself of this defense, Dun-Par argues that it did not "create" the hazard, because it did not take down or destruct existing guardrails. However, Dun-Par's attempt to recharacterize the situation does not undermine the Commission's finding that the company participated in the erection of the open-sided floor while leaving its edges unguarded. The creation of the hazard resulted in this case not from Dun-Par's actions, but from a lack thereof. Dun-Par also claims that it did not "control" the area of the violation because the general contractor was responsible for erecting the guardrails. However, the contractual responsibility of another contractor to provide protection does not always excuse an employer's permitting its employees to be exposed to a hazard. *Central of Georgia Railroad v. OSHRC*, 576 F.2d 620, 624–25 (5th Cir. 1978). Dun-Par had the primary responsibility for the safety of its own employees. *Bratton Corp. v. OSHRC*, 590 F.2d 273, 276–78 (8th Cir. 1979).

■ The issue of control is closely related to the question of whether Dun-Par took adequate steps to protect its workers from the hazard. The Commission concluded that Dun-Par did not make a reasonable effort to have the general contractor correct the situation. It found no evidence that Dun-Par requested that the general contractor erect guardrails even though its employees were working on the second level. Instead, the general contractor simply told Dun-Par when it planned to erect the guardrails and Dun-Par acquiesced in that timetable. Dun-Par also suggests that its good safety record and program, coupled with its policy of permitting only well-trained, athletic employees to work on hazardous jobs amount to "realistic measures to protect its employees." We agree with the Commission that these alternatives cannot substitute for the physical protection measures called for by the OSHA standards. As in *DeTrae Enterprises, Inc. v. Secretary of Labor*, 645 F.2d 103 (2d Cir. 1981), the record shows that "[p]etitioner neither provided alternative means of protection for its employees, warned its employees, nor prevented them from using the hazardous areas." *Id.* at 104. We conclude that there is substantial evidence not only to support the Commission's findings that Dun-Par created and controlled the area in which the violations occurred, but also to support its conclusion that Dun-Par's efforts to alleviate the hazard to which its employees were exposed were insufficient to relieve it from liability. The decision of the Commission holding Dun-Par in violation of the regulation is therefore affirmed.

## II. "Repeated" Violations

Dun-Par argues that even if the Commission correctly found a violation of the guardrail standard, it erred in characterizing this violation as "repeated." Section 17(a) of the Act, 29 U.S.C. § 666(a), provides:

> Any employer who willfully or *repeatedly* violates the requirements of section 654 of this title, any standard, rule, or order promulgated pursuant to section 655 of this title, ... may be assessed a civil penalty of not more than $10,000 for each violation.

(Emphasis added). No definition of a "repeated" violation appears in the Act, and as this court noted in *Kent Nowlin Construction Co. v. OSHRC*, 648 F.2d 1278, 1281 (10th Cir. 1981), the circuits are split regarding the appropriate interpretation of repeated. *See generally Bethlehem Steel Corp. v. OSHRC*, 540 F.2d 157 (3d Cir. 1976); *George Hyman Construction Co. v.*

*OSHRC,* 582 F.2d 834 (4th Cir. 1978); *Todd Shipyards Corp. v. Secretary of Labor,* 586 F.2d 683 (9th Cir. 1978). In *Kent Nowlin* we rejected the Third Circuit's view that repeated violations are designed to cover only intentional "flauntings" of the Act. *Bethlehem Steel Corp. v. OSHRC,* 540 F.2d 157, 162 (3d Cir. 1976). Instead, we adopted the contrary position taken by the Fourth and Ninth Circuits, which is based largely on the congressional purpose in § 666(a) of "encourag[ing] employers who have previously violated a standard to take the necessary precautions to prevent the recurrence of similar violations." *Kent Nowlin Construction Co. v. OSHRC,* 648 F.2d at 1282. *See George Hyman Construction Co. v. OSHRC,* 582 F.2d 834, 840 (4th Cir. 1978); *Todd Shipyards Corp. v. Secretary of Labor,* 566 F.2d 1327, 1330-31 n.5 (9th Cir. 1977); *Todd Shipyards Corp. v. Secretary of Labor,* 586 F.2d 683, 686 (9th Cir. 1978). We stated in *Kent Nowlin* that the enhanced penalties of a repeat violation are appropriate "when employers permit violations of the same standard to occur several times." 648 F.2d at 1282.

In *Potlatch Corp.,* [1979] OSHD (CCH) ¶ 23,294, a majority on the Commission construed "repeatedly." It stated that "[a] violation is repeated . . . if, at the time of the alleged repeated violation, there was a Commission final order against the same employer for a substantially similar violation." *Id.* at 28,171. Under the *Potlatch* construction of "repeated" violation, the Secretary establishes a prima facie case of substantial similarity by showing that the prior and present violations are for violation of the same specific standard. *Id.* An employer may then rebut this proof by showing that the prior violation, although alleging a violation of the same standard, involved "disparate conditions and hazards." *Id.* at 28,172.

■■ The Commission's interpretation of "repeated" violation is in accord with the literal wording of the statute, which states that a repeated violation citation may be issued if an employer "repeatedly violates . . . *any standard.*" 29 U.S.C. § 666(a) (emphasis added). Furthermore, it is consistent with the structure of the Act, for under OSHA, the standards generally are drafted to address either a particular workplace hazard or condition, or a set of related hazards or conditions.[1] Once an employer has been cited for an infraction under a standard, this tends to apprise the employer of the requirements of the standard and to alert him that special attention may be required to prevent future violations of that standard. Defining a repeated violation as the second violation of a particular standard is therefore in line with the general enforcement scheme of the Act which imposes a burden on employers to discover and correct potential hazards prior to an OSHA inspection, and an even greater obligation to do so once alerted by a citation and final order. 29 U.S.C. § 666(a), (b), & (j). Under this scheme, "the greater penalties for 'repeat' violations should come into play whenever an employer fails adequately to respond to a citation." *Todd Shipyards Corp. v. Secretary of Labor,* 586 F.2d 683, 685 (9th Cir. 1978). *Accord, Kent Nowlin Construction Co. v. OSHRC,* 648 F.2d 1278, 1282 (10th Cir. 1981); *George Hyman Construction Co. v. OSHRC,* 582 F.2d 834, 841 (4th Cir. 1978).

■■ It is settled that an "agency has broad discretion in formulating sanctions to enforce [an] Act." *George Hyman Construction Co. v. OSHRC,* 582 F.2d 834, 842 (4th Cir. 1978), and the Commission's interpretations of OSHA's provisions are entitled to considerable weight by a reviewing court when they are reasonable and consistent with the Act's purposes. *Clarkson Construction Co. v. OSHRC,* 531 F.2d 451, 457 (10th Cir. 1976). We are persuaded that the Commission in *Potlatch* articulated reasonable guidelines for enforcing the Act.[2]

---

1. In *Potlatch,* the Commission also stated that a repeated violation may also be based upon a prior violation of a general duty clause. Of course, in this situation, to establish a prima facie case, the Secretary must present evidence to show the "substantial similarity" of the haz-ards and conditions giving rise to the present and past violations. *Id.* at 28,172.

2. We note that the Commission's construction of "repeated" in *Potlatch* is consistent with that of this court in *Kent Nowlin.* Under *Kent*

In this case, the Commission determined that two prior citations in 1974 and 1975 for violation of the guardrail standard in 25 C.F.R. § 1926.500(d)(1) supported the characterization of the present violation as "repeated." The 1974 prior citation stated that Dun-Par's "[e]mployees working on the fourth floor [of the building] were exposed to the hazards of unguarded ... open sides of the floor with drops of approximately 12-feet and 35-feet." Record, vol. 1, exhibit B. The 1975 prior citation stated that "[t]he perimeters of the open sides of the 1st, 2nd, 3rd and 4th floors were not protected by standard guard rails. The guard rails provided were not equipped with intermediate rails." Record, vol. 1, exhibit C. According to the analysis in *Potlatch*, the citation of Dun-Par for violating the same standard on three successive occasions[3] alone satisfies the Secretary's prima facie case of a "repeated" violation. Furthermore, the descriptions of the violations in the three citations demonstrate the substantial similarity of the hazards and conditions in the previous and present violations. All three involve failure to provide adequate guardrails as required by OSHA standards. Therefore, we conclude that the Commission did not err in characterizing this violation as "repeated." The record reflects that Commission properly took into account the criteria set forth in 29 U.S.C. § 666(i) when assessing the penalty. Accordingly the Commission's order is AFFIRMED.

---

*Nowlin*, a violation is repeated "when employers permit violations of the same standard" to reoccur, 648 F.2d at 1282, while under *Potlatch*, a violation is repeated when a prior final Commission order for a "substantially similar violation" exists. [1979] OSHD (CCH) ¶ 23,294, at 28,171. Under the Commission's construction, a prior violation of the same standard gives rise to a rebuttable presumption of a repeated violation. Thus, the Commission's allocation of the burden of proof allows the employer to show that even though the same standard was violated, the conditions and hazards were substantially different. It was the view of this court in *Kent Nowlin*, and of the Fourth Circuit in *George Hyman Constr. Co. v. OSHRC*, 582 F.2d at 841–42, that the only prerequisite to establishing a repeated violation was a showing that the employer had previously violated the same standard. Under this view, the Commission's

elaboration in *Potlatch* merely adds a means by which the employer may come forth with evidence to establish the dissimilarity of the violations. Therefore, we do not share the reservations of the Fifth Circuit as expressed in *Bunge Corp. v. Secretary of Labor*, 638 F.2d 831 (5th Cir. 1981). In this case, the Fifth Circuit agreed with the Commission's "substantially similar" formulation, but disagreed with its allocation of the burden of proof. *Id.* at 837–38.

The Ninth Circuit recently adopted the Commission's construction of "repeated" in *Willamette Iron & Steel Co. v. Secretary of Labor*, 673 F.2d 1341 (9th Cir. 1982).

3. The fact that the prior citations were uncontested does not prohibit their use as the basis for a "repeated" violation. Whether contested or not, the citations are final orders of the Commission.