**HAVENS STEEL COMPANY, Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, et al., and Raymond J. Donovan, Secretary of Labor, Respondents.**

No. 82–2261.

United States Court of Appeals,
Tenth Circuit.

July 9, 1984.

Thomas M. Moore of Gould & Moore, Kansas City, Mo., for petitioner.

Andrea C. Casson, Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol., Washington, D.C., for Occupational Safety and Health, Dennis K. Kade, Washington, D.C., Counsel for Appellate Litigation, James E. Culp, Atty., Washington, D.C., and Tedrick A. Housh, Regional Sol., Kansas City, Mo., with her on the brief), for respondents.

Before SETH, BREITENSTEIN and SEYMOUR, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This case is before the court on the petition for review by Havens Steel Co. of an order of the Occupational Safety and Health Review Commission, the Commission, finding that Havens had violated safety standards. We deny the petition to review and affirm the Commission.

In February, 1981, Havens, a construction firm engaged in structural steel erection, began work at the construction site of the Sunflower Electric Plant near Holcomb, Kansas. Later that year Havens erected a decking floor, the so-called bolt-up floor, about 45–50 feet above the ground. This was used to store bolts, equipment, tools, and drinking water. The testimony showed that Havens' employees used either of two wheel well pulleys and ropes located at the edge of the bolt-up floor to raise materials from the ground. The employees occasionally leaned over the edge of the floor to shout bolt specifications to the journeyman below. Neither the pulley areas nor the edge of the bolt-up deck had guardrails to protect the employees.

Employees could reach the bolt-up deck during certain hours of the day, at lunch and at the beginning and end of each shift, by crane which lifted a "skip box" to the deck. The second access required employees to climb two access ladders to a concrete turbine generator pedestal. Employees walked across this four foot wide pedestal, the end of which stood 3 to 4 feet lower than the deck with a gap of 2 feet separating the two. Employees crossed this gap on a 32 inch wooden ramp which was not equipped with guardrails to protect employees from a fall of 25 feet on one side or 45 to 50 feet on the other.

Mike Simpson, an iron worker, and Gary Tipton, the union steward, spoke with one of Havens' foremen, and to George Wright, the job superintendent, about perimeter guarding on the bolt-up deck and the ramp. Tr. 153, 156–161, 163, 6A–9A. The foreman stated that while he recognized the problem, management had decided to wait to install permanent guardrails rather than temporary ones, Tr. 15A–16A. When their complaints remained unremedied on June 11, Simpson filed a complaint with the Secretary of Labor. The conditions remained unchanged when the compliance officers inspected the work site on June 17 and 18. The steward, Tipton, accompanied the inspectors on their tour of the pedestal, ramp, and bolt-up deck. Superintendent Wright was interviewed as well as three employees, Charles Lamore, Bill Fassnichi, and Bill Martin who were installing hand-

rails on a stairway leading up from the bolt-up deck. Tr. 16–19.

On August 25, 1981, the Commission issued two citations. The first alleged a serious violation of § 5(a)(2) of the Act and 29 C.F.R. 1926.500(d)(1) for failure to equip the turbine generator pedestal with a railing and a serious violation of 29 C.F.R. 1926.500(d)(2) relating to the guarding of the ramp. For these two infractions the Commission assessed a penalty of $720.00. The second alleged a willful violation of § 5(a)(2) of the Act and 29 C.F.R. 1926.500(d)(1) for failure to provide perimeter protection for the bolt-up deck. For this violation a penalty of $5,760.00 was assessed.

Two hearings were held before an Administrative Law Judge, ALJ. He entered a decision on August 2, 1982 affirming the citations and the proposed penalties. Havens petitioned for discretionary review by the Commission, and when no Commissioner directed a review, the ALJ's decision became final. This petition for review followed. We have jurisdiction under 29 U.S.C. § 660(a).

The citations in this case were issued 67 days after the inspection. Havens Steel challenges the ALJ's determination that the citations were valid on the ground that they were not issued with reasonable promptness as required by § 9(a) of the Act, 29 U.S.C. § 658(a). It argues that the delay was unconscionable and that its defense was prejudiced by the delay.

As Havens Steel notes in its brief, p. 18, "The OSHRC has expressly stated that the appropriate consideration of whether to vacate or not for a citation alleged not to have been issued with 'reasonable promptness' is prejudice to the employer from the delay *NOT* justifiability of the delay."

See National Industrial Constructors, Inc., 1981 OSHD (CCH) ¶ 25,743.

The company argues first that this court should overrule this standard as unconscionable since it is inconsistent with the legislative history and purposes of the Act and renders the "reasonable promptness" requirement null and void.

The Commission's interpretations of the Act are entitled to weight if they are reasonable and consistent with the Act's purpose. *Dun-Par Engineered Form Co. v. Marshall,* 10 Cir., 676 F.2d 1333, 1337; *Clarkson Construction Co. v. OSHRC,* 10 Cir., 531 F.2d 451, 457. In light of the broad remedial and preventive purposes of the Act to assure "every working man and woman in the Nation safe and healthful working conditions ..." 29 U.S.C. § 651(b), we decline to adopt a rule requiring dismissal based on a procedural violation where the employer has failed to show that he was prejudiced. This view, supporting the Commission's interpretation, accords with the views of other circuits considering the question. See *Bethlehem Steel Corp. v. OSHRC,* 3 Cir., 607 F.2d 871, 876; *Stephenson Enterprises, Inc. v. Marshall,* 5 Cir., 578 F.2d 1021, 1023; and *United Parcel Service of Ohio v. OSHRC,* 8 Cir., 570 F.2d 806, 809–810.

Havens Steel argues that a statement from the legislative history that 72 hours was the expected period for issuance of a citation requires a different result. See Conference Report No. 91–1765, 91st Cong. 2d Sess., 1970 U.S.Code Cong. & Admin.News, pp. 5177, 5228, 5234. As explained in *Brennan v. Chicago Bridge and Iron Co.,* 7 Cir., 514 F.2d 1082, 1085, n. 7, the legislative history considered as a whole does not support the imposition of a mechanical 72-hour rule. We agree with that decision.

The Company argues that the ALJ's determination that it was not prejudiced by the delay disregards the record evidence of prejudice. It argues it was prejudiced by the fact that the three interviewed employees, Lamore, Fassnichi, and Martin, no longer worked for the company and could not be located to testify. The ALJ held that Havens had failed to show that it possessed "insufficient knowledge of the details of the citation that would be peculiar with the knowledge of the absent wit-

nesses" R.Vol. III, p. 93–94. He gave his reasons why this was so. They included, (1) all the violations were in plain view and could have been seen from either the ground or from atop the pedestal, (2) superintendent Wright was fully advised of the alleged violations, (3) the representations of Havens Steel as to what, if anything, the absent members of the crew could contribute to the evidence were speculative and without foundation in view of the photographed evidence and the testimony of those who participated in the inspection. Id.

The ALJ found that project superintendent Wright's testimony that a cable at the wheel well pulley was there to protect the employees was not credible. Havens Steel objects to this finding. The ALJ based his determination that Wright's testimony was not credible on the fact that,

"[h]is self-contradictory testimony that from the ground he could observe strung cable across [the] pulley prior to the inspection and that he could observe storage of bolts on the bolt-up deck is entirely inconsistent with his inability to observe the crossing ramp in open view, which could be observed from the ground, and the access ladder to the pedestal which was also equally in open view." R.Vol. III, p. 97.

Havens has not shown any way in which the testimony of the three absent employees could have solved these problems.

■ Havens argues that the delay prejudiced its defense because the nature of the construction project had totally changed between the date of inspection and the issuance of the citations. It says that recollections had dimmed and evidence was hard to gather. As the Commission made clear in National Industrial Constructors, Inc., supra, 1981, OSHD (CCH) ¶ 25,743, unsupported general allegations are not sufficient to establish prejudice. The possible testimony of the three absent witnesses is mere speculation. The hazardous conditions were in plain sight, and the Company had two foremen who worked on the bolt-up deck, at least one of whom had been approached about the problems, who could have testified. Changed conditions standing alone are not sufficient to require the Commission to vacate the citations. In the circumstances of this case the Commission acted with reasonable promptness in issuing the citations.

■ In reviewing the findings of the Commission, this court asks only whether they are supported by substantial evidence. 29 U.S.C. § 660(a); *Dun-Par Engineered Form Co. v. Marshall*, 10 Cir., 676 F.2d 1333, 1335. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kent Nowlin Construction Co., Inc. v. OSHRC*, 10 Cir., 648 F.2d 1278, 1279 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126).

As the ALJ noted, the standard for liability on a multi-employer work site was enunciated in Secretary v. Anning-Johnson Co., 1975–1976 OSHD (CCH) ¶ 20,680, where the Commission held that the Secretary must show a violation of the standard and employee exposure to the hazard. The Commission allowed the employer to establish an affirmative defense to liability by showing that it neither created nor controlled the hazardous condition. As quoted in *Dun-Par, supra*, 676 F.2d at 1336, the Commission said that a non-controlling, non-creating employer could defend his non-compliance by showing either:

"(a) that its employees who were or may have been exposed to the hazard were protected by means of realistic measures taken as an alternative to literal compliance with the cited standard, or (b) that it did not have nor with the exercise of reasonable diligence could have had notice that the condition was hazardous."

Havens argues that it neither created nor controlled the areas of the jobsite, the pedestal and ramp, that were found to be in serious violation of the safety standard of 20 C.F.R. 1926.500(d)(1). The Company says that Newburg Construction Co. built the concrete turbine pedestal and that

Havens neither had any work to do nor performed any work from it.

■ The ALJ determined that Havens failed to establish the second part of the test. The evidence showed that the condition could be seen from the ground. Havens did not show that it attempted to get the general contractor or Newburg Construction to abate the hazardous condition. It argues that it provided a realistic alternative mode of transportation by the skip box. The testimony showed that two-thirds to three-fourths of the employees on the bolt-up deck used the pedestal and ramp as a means of transportation. Tr. 56A. The skip box was available only at lunch and at the beginning and end of a shift. Tr. 19A, 57A. The ALJ found that Wright's testimony that he was not aware of this fact was not credible. The evidence supports the finding that the skip box was not a realistic alternative. Havens failed to establish the Anning-Johnson defense. The decision of the Commission that Havens was in serious violation of the safety standards with respect to both the pedestal and the ramp is affirmed.

■ The ALJ found that Havens' failure to erect guardrails around the bolt-up deck was willful in that the Company officials made a "conscious and deliberate decision not to comply with a known requirement of the Act in not providing interim guardrail protection." R.Vol. III p. 98. *Kent Nowlin Construction Co. v. OSHRC*, 10 Cir., 593 F.2d 368, 372, says that a violation is willful,

> "if done knowingly and purposely by an employer who, having a free will or choice, either intentionally disregards the standard or is plainly indifferent to its requirement. An omission or failure to act is willfully done if done voluntarily and intentionally."

Havens cites *Holtze Construction Co. v. Marshall*, 10 Cir., 627 F.2d 149. In that case the court noted that no work was

begun until the unguarded areas were protected. In the case at bar over three weeks elapsed during which time the employees worked in the area without the protection of guardrails. The record establishes that the job superintendent Wright and the bolt-up deck foreman were aware of employees working in unguarded conditions. They were approached about the problem before the inspection by Simpson and Tipton. Tr. 153, 159–161, 6A–9A. Substantial evidence supports the ALJ's characterization of the violation as willful.

The petition to review is denied and the order of the Commission is affirmed.