**CATERPILLAR, INC., Petitioner,**

v.

**Alexis M. HERMAN, Secretary of Labor, and Occupational Safety and Health Administration, Respondents,**

and

**United Auto Workers, Local 974, Intervening Respondent.**

**No. 97–3488.**

United States Court of Appeals, Seventh Circuit.

Argued May 14, 1998.

Decided Aug. 25, 1998.

---

Robert E. Mann (argued), Sally J. Scott, Franczek, Sullivan, Mann, Crement, Hein & Relias, Chicago, IL, for Caterpillar, Inc.

Allen H. Feldman (argued), Department of Labor, Appellate Litigation, Washington, DC, Richard J. Fiore, Department of Labor, Chicago, IL, for Alexis M. Herman.

Ray Darling, Jr., Occupational Safety & Health Review Commission, Daniel J. Mick, Occupational Safety & Health Adminstration, Office of the Director, Washington, DC, for Occupational Safety & Health Administration.

Jerome Schur, Martha A. Garcia, Tracy E. Petruso, Katz, Friedman, Schur & Eagle, Chicago, IL, for United Auto Workers, Local 974.

Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

POSNER, Chief Judge.

Before us is a petition to review an order by the Occupational Safety and Health Review Commission finding that Caterpillar committed two violations of the Occupational

402

Safety and Health Act at a plant in East Peoria in which it manufactures earth-moving equipment—one a "willful" violation and the other a "repeated" one—and assessing penalties of $10,000 and $12,000 respectively. Caterpillar does not contest the violations, but merely the characterizations that we have placed within quotation marks. The maximum penalty for a willful or repeated violation—$70,000—is ten times the maximum penalty for a merely "serious" violation. 29 U.S.C. §§ 666(a), (b).

The allegedly willful violation involves a machine called a "track press," which presses heavy steel links together horizontally on a table-like surface to form a chain. In a part of the process known as "indexing," the movement of the moving parts of the machine exposes a three-inch-square hole in the table into which debris can fall that will impede the operation of the machine. If a worker reaches into the hole to remove the debris without stopping the machine, he may get his fingers caught and crushed in the machinery. To prevent this, Caterpillar placed an "index cover" over the hole, but the cover got damaged in the operation of the machine and was removed, leaving the hole exposed. After an OSHA inspection in August 1993, Caterpillar reprogrammed the machine so that it would stop automatically unless the operator had both hands on the controls; and this solved the problem. The finding of willfulness was based on evidence that Caterpillar had been aware of the problem since February and had failed to do anything about it.

 The hole in its unprotected form constituted a "pinch point" or "nip point" in violation of an OSHA regulation. 29 C.F.R. § 1910.212(a)(1). Whether it was a willful violation depended on whether it resulted from a conscious disregard of the regulation, or was merely careless. *United States v. Ladish Malting Co.*, 135 F.3d 484, 490 (7th Cir.1998); *Caterpillar Inc. v. OSHRC*, 122 F.3d 437, 440 (7th Cir.1997); *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1047 (7th Cir.1989); *Ensign–Bickford Co. v. OSHRC*, 717 F.2d 1419, 1422 (D.C.Cir.1983). The distinction is similar to that in tort law between recklessness and negligence, on which see,

e.g., *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1041–42 (7th Cir. 1990); *Saba v. Compagnie Nationale Air France*, 78 F.3d 664, 668–70 (D.C.Cir.1996). If Caterpillar (which is to say its managers or supervisors, whose knowledge, Caterpillar does not deny, is imputed to the company) knew about the violation and could have corrected it but failed to do so, then the violation was willful. Caterpillar's principal argument is that it didn't know the index cover had come off. Cf. OSHA Field Operations Manual, ch. IV(B)(3), *Occupational Safety & Health Reporter*, Reference File, p. 77:2509–10 (Feb. 2, 1994). The argument raises a simple question of fact, and since the Commission's resolution of it was supported by substantial evidence, that is the end of our consideration. 29 U.S.C. § 660(a); *Martin v. OSHRC*, 499 U.S. 144, 148, 155, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); *Caterpillar Inc. v. OSHRC, supra*, 122 F.3d at 439–40.

The allegedly repeated violation presents a more difficult question. The statute does not define "repeatedly violates." Read naturally, as in *Bethlehem Steel Corp. v. OSHRC*, 540 F.2d 157, 162 (3d Cir.1976), the term implies more than two violations but not necessarily of a similar character. But the term has been more commonly interpreted to mean (1) two or more violations of the same safety standard, provided that the violations are substantially similar, e.g., *P. Gioioso & Sons, Inc. v. OSHRC*, 115 F.3d 100, 103 n. 2 (1st Cir.1997); *D & S Grading Co. v. Secretary of Labor*, 899 F.2d 1145, 1147 (11th Cir.1990), or (2) simply two or more substantially similar violations, *Reich v. D.M. Sabia Co.*, 90 F.3d 854, 860 (3d Cir.1996) (overruling *Bethlehem*), or (3) either two or more violations of the same specific standard (subject to rebuttal if the violations are not substantially similar) or two or more substantially similar violations of different standards. *Dun–Par Engineered Form Co. v. Marshall*, 676 F.2d 1333, 1337 and n. 2 (10th Cir.1982); *Secretary of Labor v. Potlatch Corp.*, 1979 WL 61360 at *3–4 (O.S.H.R.C. Jan. 22, 1979). (2) and (3) amount to the same thing, except for the burden of proof; (1) is narrower.

There is another wrinkle. In its Field Operations Manual, a detailed statement of

enforcement policy, OSHA tells its staff not to issue a citation for a repeated violation unless there was a previous violation within three years. Ch. IV(B)(5)(d)(1), *Occupational Safety & Health Reporter, supra,* Reference File, p. 77:2512. Whether this is intended as an interpretation of the statute or is merely an attempt to establish enforcement priorities, and if the former what weight a reviewing court should give it, are unclear, see *Martin v. OSHRC, supra,* 499 U.S. at 157, 111 S.Ct. 1171, but also irrelevant in this case. In 1991 Caterpillar was cited for a violation of a safety standard, closely related to (in fact part of the same regulation as) the "nip point" standard violated by the track press, aimed at guarding the operator from the normal hazards of the machine. 29 C.F.R. § 1910.212(a)(3)(ii). So the three-year requirement is met.

■ It would be nice if OSHA would make clear what it thinks a repeated violation is. Then *Chevron* deference would click in, *Martin v. OSHRC, supra,* 499 U.S. at 152, 111 S.Ct. 1171 (the court in *Dun–Par* erred in thinking that it is the Commission, and therefore *Potlatch,* to which deference is owed), and the confusion over the meaning of "repeatedly" would be dissipated. The Field Operations Manual takes a position similar to that of *Potlatch*—position (3): only one previous citation is necessary; the requisite similarity is shown more or less automatically by violating the identical standard a second time, though the employer can rebut by showing that the hazardous conditions found the second time were not substantially similar to those the first time; if the two violations are substantially similar, the second can be deemed a repeated violation even if it is of a different standard. *Occupational Safety & Health Reporter, supra,* Reference File, p. 77:2511. But again we don't know whether this is intended as statutory interpretation or as merely the setting of enforcement priorities. No matter. The precise standard is not important here, once *Bethlehem* is rejected (and Caterpillar does not defend it), for we have a second violation of the same standard and it could reasonably be thought substantially similar to the first violation.

■ The 1991 violation had involved an "ironworker" press that didn't have a barrier guard. The 1993 violation involved a larger press called an "LVD" that was equipped with an electric eye device which stopped the machine automatically if the operator thrust his hands into the "light curtain" created by the electric eye. Some of the operators of the LVD, with the connivance of their supervisors, disabled the electric eye by means of mirrors. Caterpillar argues that this was not enough like the ironworker's lack of barrier guards to count as a substantially similar violation of the safety standard. Caterpillar is a large company with, no doubt, hundreds or even thousands of machines that are hazardous to the operator unless there is a mechanical or electrical barrier to the operator's catching his hand in the machine while it is in operation. The larger the company, the more likely is a violation to be repeated, even if the larger company is just as careful as the smaller one. Now it is true that the $70,000 penalty for a repeated violation is just a maximum, and that the statute directs OSHRC, in assessing penalties, to take into consideration the employer's size, among other factors. 29 U.S.C. § 666(j). But OSHA's Field Inspection Reference Manual, in its own version of the federal sentencing guidelines, makes size an aggravating rather than mitigating factor in the assessment of penalties for repeated violations. Ch. IV(C)(2)(*l*)(2), *Occupational Safety & Health Reporter,* Reference File, *supra,* p. 77:0235. This means that if "substantially similar" in a case such as the present one is defined as *any* barrier failure, repeated violations will be unavoidable and invite enhanced penalties without connoting any enhanced culpability. To distinguish between repeated violations that reflect simply the scale of a company's operations and those that indicate a failure to learn from experience, "substantially similar" must be defined sufficiently narrowly that the citation for the first violation placed the employer on notice of the need to take steps to prevent the second violation.

Given the first citation, then, should Caterpillar have been particularly alert for the condition that brought about the second violation? The fact that the first barrier was mechanical and the second electrical cannot be crucial. These are interchangeable methods of protecting the operator's hands from

moving machinery. Recall how, in order to cure the willful violation, Caterpillar eventually substituted an electrical for a physical barrier. Suppose, then, that the barrier for the LVD had been not a light curtain but a steel guard and Caterpillar had allowed it to be removed by the operators. We do not think that Caterpillar would be seriously arguing that this was not a substantially similar violation. If it was, then we also do not think that the Commission was required as a matter of law to conclude that the fact that the second barrier was electrical destroyed the substantial similarity of the two incidents.

We can imagine an argument that the light curtain was more vulnerable than a mechanical barrier would have been to being disabled by the operators, and therefore that the first citation may not have warned Caterpillar of this danger. But as Caterpillar has not explained the circumstances in which the first violation was committed—whether the barrier had been removed by the operators of the ironworker, as opposed to having never been installed, removed by the manufacturer of the machine, or destroyed in the operation of the machine—we cannot evaluate the argument and thus cannot use it as a basis (the only plausible basis that the record discloses) for invalidating the Commission's order.

The order must therefore be ENFORCED.