**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 28 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNIVERSAL CONSTRUCTION
COMPANY, INC.,

Petitioner,

v.

OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION,

Respondent.

No. 98-9519

## APPEAL FROM
## OCCUPATIONAL SAFETY HEALTH REVIEW COMMISSION
### (No. OSHRC 97-1946)

Roy Bash (William E. Quirk and Michael J. Elston with him on the brief),
Shughart Thomson & Kilroy, P.C., of Kansas City, Missouri, for the petitioner.

Bruce Justh, Counsel for Appellate Litigation, (Marvin Krislov, Deputy Solicitor
for National Operations, and Joseph M. Woodward, Associate Solicitor for
Occupational Safety and Health, with him on the brief), U.S. Department of
Labor, of Washington, D.C., for the respondent.

Before **KELLY, McWILLIAMS,** and **BRISCOE**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Petitioner Universal Construction Company appeals a final order of the Occupational Safety and Health Review Commission affirming the imposition of a penalty against Universal under the "multi-employer worksite" doctrine, based on a subcontractor's violation of construction safety standards. We affirm.

The parties have stipulated to certain facts. Universal is a general contractor engaged in the construction business. In December 1996, Universal contracted with UMB Bank to construct a branch bank office in Independence, Missouri, and shortly thereafter, subcontracted with A. Zahner Sheetmetal Company to perform portions of the project.

On October 6, 1997, an Occupational Safety and Health Administration compliance officer visited the project worksite and observed a Zahner employee violate two OSHA construction safety standards. An employee working in an aerial lift failed to wear and attach a safety belt to the lift basket, in violation of 29 C.F.R. § 1926.453(b)(2)(v), and the employee climbed out of the lift basket onto a building roof, in violation of 29 C.F.R. § 1926.453(b)(2)(iv). Universal's field manager and foreman were at the jobsite and in a position to observe the violations. They had authority to correct the hazards or to direct Zahner's foreman to correct the hazards, but neither did so. It is not disputed that Zahner created the hazards and only Zahner employees were exposed to the hazards.

On October 16, 1997, Universal was cited for a serious violation based on

the October 6 incidents and a $1,500 penalty was imposed. [1] The citation was justified by Universal's ability to control the hazardous conditions that led to the violations. On March 18, 1998, an administrative law judge upheld the citation, concluding Universal was properly cited under the multi-employer doctrine because it controlled the worksite and had authority to direct a subcontractor to abate any hazardous conditions created by the subcontractor. Universal timely filed for discretionary review by the Commission, but the Commission opted not to review the case and the ALJ's decision became final on April 27, 1988. On appeal, Universal challenges the validity of the Commission's "multi-employer" theory of liability. We have jurisdiction under 29 U.S.C. § 660(a) because Universal's principal place of business is in Kansas City, Kansas.

## Multi-Employer Doctrine

The multi-employer doctrine provides that an employer who controls or creates a worksite safety hazard may be liable under the Occupational Safety and Health Act even if the employees threatened by the hazard are solely employees of another employer. The doctrine has its genesis in the construction industry where numerous employers, often subcontractors, work in the same general area, and where hazards created by one employer often pose dangers to employees of

---

[1] A serious violation exists "if there is a substantial probability that death or serious physical harm could result from" an existing condition. 29 U.S.C. § 666(k).

other employers. The Secretary has imposed liability under the doctrine since the 1970's and has steadfastly maintained the doctrine is supported by the language and spirit of the Act. The Secretary's interpretation has been accepted in one form or another in at least five circuits, and rejected outright in only one. See United States v. Pitt-Des Moines, Inc., 168 F.3d 976 (7th Cir. 1999); R.P. Carbone Constr. Co. v. Occupational Safety & Health Review Comm'n, 166 F.3d 815 (6th Cir. 1998); Beatty Equip. Leasing, Inc. v. Secretary of Labor, 577 F.2d 534 (9th Cir. 1978); Marshall v. Knutson Constr. Co., 566 F.2d 596 (8th Cir. 1977); Brennan v. Occupational Safety & Health Review Comm'n, 513 F.2d 1032 (2d Cir. 1975); but see Southeast Contractors, Inc. v. Dunlop, 512 F.2d 675 (5th Cir. 1975). We have not had occasion to expressly consider the validity of the doctrine, although we have cited it approvingly in a similar context. See Havens Steel Co. v. Occupational Safety & Health Review Comm'n, 738 F.2d 397, 400 (10th Cir. 1984). We now join the majority of circuits and adopt the multi-employer doctrine.

The Secretary pins statutory authorization for the multi-employer doctrine on 29 U.S.C. § 654(a)(2). Section 654(a) delineates the duties of employers:

> (a) Each employer --
>     (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
>     (2) shall comply with occupational safety and health standards

promulgated under this chapter.

The Secretary construes § 654(a)(1) & (2) as imposing two distinct duties. First, (a)(1) requires employers to protect their own employees from hazards in the workplace. The employer's duty under (a)(1) flows only to its employees, as indicated by the language specifically limiting the employer's obligation to maintain a hazard-free workplace to "his employees." Second, (a)(2) requires employers to comply with the Act's safety standards. Unlike (a)(1), it does not limit its compliance directive to the employer's own employees, but requires employers to implement the Act's safety standards for the benefit of all employees in a given workplace, even employees of another employer. OSHA issues citations based on the multi-employer doctrine under (a)(2). Universal contends the language of § 654(a) may not reasonably be read as authorizing the Secretary to impose liability outside the employer-employee relationship. [2]

We review an agency's interpretation of its enabling statute in accordance with the decision in <u>Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984). First, we determine if the statute is unambiguous on

---

[2] Universal also contends the Secretary could not lawfully apply the doctrine without first adopting it through rule making. This position clearly is incorrect. The decision to proceed by rule or adjudication is generally within the informed discretion of the agency. <u>Nunez-Pena v. INS</u>, 956 F.2d 223, 225 (10th Cir. 1992). Moreover, the principle here is not new, but has existed and has been applied for over twenty years.

its face. Marshall v. Chater, 75 F.3d 1421, 1428 (10th Cir. 1996). If Congress has directly spoken to the issue, and its intent is clear, we must give effect to its intent. Id. If the statute does not address the specific issue at hand or is ambiguous, we next determine if the agency's interpretation is based on a permissible construction of the statute. Id. If so, we will defer to the agency's interpretation. Id. An agency's interpretation of a specific statutory provision is entitled to deference and will be upheld if it is reasonable and consistently applied and does not frustrate the policy sought to be implemented by Congress. See New Mexico Dep't of Human Servs. v. Department of Health & Human Servs. Health Care Fin. Admin, 4 F.3d 882, 884-85 (10th Cir. 1993). In applying these standards, we bear in mind that the Occupational Health and Safety Act is remedial legislation designed to protect employees from workplace dangers, and therefore must be liberally construed. See Whirlpool Corp. v. Marshall, 445 U.S. 1, 11, 13 (1980); Clarkson Constr. Co. v. Occupational Safety & Health Review Comm'n, 531 F.2d 451, 458 (10th Cir. 1976).

While broad, the language of § 654(a)(2) is ambiguous and does not clearly compel the conclusion that Congress did or did not intend to permit the Secretary to impose liability for hazards that an employer controlled but did not create and which did not threaten the employer's employees. It may be, as the Secretary asserts, that (a)(2) was intended to create a specific duty requiring an employer to

comply with OSHA safety standards for the good of all employees -- even those employed by others -- at a common worksite. If so, however, it is plausible that Congress would have chosen more direct phrasing to implement such a scheme.

The interpretation urged by Universal fares no better under plain language scrutiny. Subsection (2) on its face does not limit an employer's duty to comply with safety standards only to the employer's employees. Nor is there any patently compelling reason to assume merely because liability under (a)(1) is limited to situations where an employer's own employees are exposed to hazards, liability under (a)(2) is likewise limited. Where language appears in one section of a statute but not in another section, we assume the omission was intentional. See Bates v. United States, 118 S. Ct. 285, 290 (1997).

The Seventh Circuit recognized the dilemma in attempting to resolve this issue based solely on the plain language of the Act and its legislative history when it acknowledged nearly twenty-five years ago that "Congress apparently gave little thought to the unique relationship which arises when employees of a number of different employers work in and around the same job site and are subject to the hazards which may exist at that site." Anning-Johnson Co. v. United States Occupational Safety and Health Review Comm'n, 516 F.2d 1081, 1087 n.14 (7th Cir. 1975). Given the ambiguities of the statute, we are not prepared to conclude the plain language of the statute alone or its nonexistent

legislative history on this issue permits us to accept or reject the multi-employer doctrine.

Because § 654(a)(2) is ambiguous regarding this issue, we consider if the agency's interpretation is based on a permissible construction of the statute and does not frustrate the policy underlying the Act. In this respect, the ambiguity of (a)(2) and, in particular, the omission from (a)(2) of any language expressly limiting an employer's liability only to its employees, militate in favor of the Secretary's interpretation. "The use of the words 'his employees' in describing the duties of Section 654(a)(1) and the conspicuous absence of any limiting language in Section 654(a)(2), certainly indicate that a broader class was meant to be protected by the latter." Pitt-Des Moines , 168 F.3d at 983.

In addition, the Secretary's interpretation furthers rather than frustrates the policy underlying the Act. The Act was designed "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions." 29 U.S.C. § 651. To achieve this end, Congress focused primarily on "making places of employment, rather than specific employees, safe from work related hazards." Pitt-Des Moines , 168 F.3d at 983; see Brennan , 513 F.2d at 1038 ("It was the intention of Congress to encourage reduction of safety hazards to employees at their places of employment."). It is the combination of the broader language of § 654(a)(2) and the remedial goal of ensuring safer

workplaces that has "led courts to conclude that the multi-employer doctrine is fully consistent with the Act." Pitt-Des Moines, 168 F.3d at 983; see Brennan, 513 F.2d at 1038. We agree that the multi-employer doctrine is consistent with the language of § 654(a)(2) and the purpose of the Act.

The multi-employer doctrine is particularly applicable to multi-employer construction worksites, and in fact has been limited in application to that context. See American Petroleum Inst. v. OSHA, 581 F.2d 493, 508 (5th Cir. 1978). The nature of construction requires that subcontractors work in close proximity with one another and with the general contractor at the same worksite. "In this situation, a hazard created and controlled by one employer can affect the safety of employees of other employers on the site." Bratton Corp. v. Occupational Safety & Health Review Comm'n, 590 F.2d 273, 276 n.5 (8th Cir. 1979). Rules of craft jurisdiction, however, may limit one subcontractor's ability to abate hazards posed to its own employees that were created by another subcontractor or a general contractor. See, e.g., IBP, Inc. v. Herman, 144 F.3d 861, 864 (D.C. Cir. 1998); Zemon Concrete Corp. v. Occupational Safety & Health Review Comm'n, 683 F.2d 176, 181 (7th Cir. 1982). To alleviate these hazards and ensure compliance with safety standards, the general rule regarding multi-employer construction worksites is that employers will be liable under § 654(a)(2) for hazards the employer either created or controlled, regardless of whose employees

-9-

are threatened by the hazard. Thus, a subcontractor that creates a hazard may be cited under (a)(2) even if its own employees are not threatened. See id. at 180; Bratton, 590 F.2d at 276; Beatty, 577 F.2d at 537; Brennan, 513 F.2d at 1038; see also Havens, 738 F.2d at 400. Similarly, a general contractor, which often will not have created the hazard but will be in control of the worksite and have authority to abate the hazard, may be cited under (a)(2) if it unreasonably fails to correct a hazard it created or unreasonably fails to direct a subcontractor to correct a hazard created by the subcontractor. See Carbone, 166 F.3d at 818; Marshall, 566 F.2d at 599.

We disagree with Universal that the multi-employer doctrine unfairly burdens general contractors. A subcontractor whose employees are threatened by a hazard created and controlled by another subcontractor has only two options: request the offending subcontractor to abate the hazard or request the general contractor to correct or direct correction of the condition.[3] Bratton, 590 F.2d at 277. As a practical matter, the general contractor may be the only on-site person with authority to compel compliance with OSHA safety standards. See Anning-

---

[3] The complaining subcontractor, of course, remains responsible for taking reasonable steps to protect its employees from hazards it neither controlled nor created. These steps may include directing its employees to avoid the area if practical or ensuring employee safety by alternative measures. See generally Dun-Par Engineered Form Co. v. Marshall, 676 F.2d 1333, 1335-36 (10th Cir. 1982).

Johnson , 516 F.2d at 1088 ("On a multi-employer construction site, it is the general contractor who contractually controls the worksite."). "General contractors normally have the responsibility and the means to assure that other contractors fulfill their obligations with respect to employee safety where those obligations affect the construction worksite." Marshall , 566 F.2d at 599. "Accordingly, [it is reasonable and consistent with the purpose of the Act to] hold a general contractor responsible under § 654(a)(2) for safety standard violations which it could reasonably have been expected to prevent or abate by reason of its supervisory capacity." Id. (citation omitted); see Carbone , 166 F.3d at 818. The general contractor's duty in this regard is not limited to protecting its own employees from hazards, but extends to protection of all worksite employees. Id.; Marshall , 566 F.2d at 599.

Of the courts to consider the multi-employer doctrine, only the Fifth Circuit has rejected it. See Melerine v. Avondale Shipyards, Inc. , 659 F.2d 706 (5th Cir. 1981); Horn v. C.L. Osborn Contracting Co. , 591 F.2d 318 (5th Cir. 1979); Southeast Contractors, Inc. v. Dunlop , 512 F.2d 675 (5th Cir. 1975). None of these cases persuasively explain the basis for rejection of the doctrine. In fact, Dunlop , on which subsequent cases were based, is a one-paragraph opinion in which the court merely agreed with "the well-reasoned dissent of Chairman Moran . . . that a contractor is not responsible for the acts of his subcontractors or

-11-

their employees." 512 F.2d at 675. In    Clarkson , we rejected the core of    Dunlop

and also implicitly endorsed the multi-employer doctrine. In        Clarkson , a

subcontractor's employee was driving a dump truck in reverse along the shoulder

of a highway (considered to be the worksite) and the truck struck and killed a

worker. In violation of safety standards, the truck was not equipped with reverse

signal alarms and there was no lookout posted. The general contractor, rather

than the subcontractor, was cited for OSHA violations. We rejected the

contention that the general contractor could not be cited because it was not

"using" the truck as required by the applicable standard.

> We are unable to overlook the fact that the truck driver who
> ran over and killed the employee was serving the objects and
> purposes of Clarkson.
> . . . .
> . . . In order to accomplish [the broad remedial] purpose [of
> the Act], it is necessary to look to an employer who controls the
> working environment. . . .
> So, then, even though the employee in question was an
> employee of Advance, he was nevertheless under the direction and,
> more important, control of Clarkson, the general contractor.

Id. at 457-58.  Clarkson  therefore constitutes a rejection of    Dunlop  and

subsequent Fifth Circuit cases rejecting the doctrine, as well as an endorsement of

the rationale -- control -- on which a general contractor's liability is based under

the multi-employer doctrine.

As Universal notes, the D.C. Circuit has neither accepted nor rejected the

doctrine, and has specifically avoided ruling on the issue.        See IBP, 144 F.3d at

-12-

865-66; <u>Anthony Crane Rental, Inc. v. Reich</u>, 70 F.3d 1298, 1306 (D.C. Cir. 1995). The court's reluctance to adopt the doctrine is premised upon perceived "tension between the Secretary's multi-employer theory and the language of the statute and regulations." <u>IBP</u>, 144 F.3d at 865. While we concede the multi-employer doctrine and the language of the Act are not perfectly harmonious, the broad language and remedial purpose of the Act in combination persuade us that the Secretary's interpretation of § 654(a)(2) is consistent with and does not frustrate the policy of the Act.

### Application of Doctrine to Universal

Universal argues if the multi-employer doctrine is a valid exercise of the Secretary's authority under the statute, it is unreasonably applied in situations where, as here, the general contractor has mere contractual control over the worksite. In support of this argument, Universal again directs our attention to <u>IBP</u>, where the court ruled the multi-employer doctrine, even if valid, was not applicable because the general contractor's only control over the subcontractor was a contractual provision permitting the general contractor to cancel the contract or revoke the identification card of a subcontractor's employee if safety standards were not followed.

We review the Commission's findings of fact under a substantial evidence standard. 29 U.S.C. § 660(a); <u>Interstate Erectors, Inc. v. Occupational Safety &</u>

Health Review Comm'n, 74 F.3d 223, 226 (10th Cir. 1996). This standard is satisfied if, after conducting a plenary review of the record, "a reasonable mind" would consider the evidence adequate to support the conclusion reached. Aylett v. Secretary of Housing & Urban Dev., 54 F.3d 1560, 1561 (10th Cir. 1995). We review the Commission's legal conclusions to determine if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Interstate, 74 F.3d at 226. Our review under this standard is a narrow one that encompasses a wide level of deference to the agency. Maier v. EPA, 114 F.3d 1032, 1039 (10th Cir. 1997).

We need not decide if we would find the limited control afforded the general contractor in IBP sufficient to permit liability under the multi-employer doctrine. Unlike IBP, Universal had plenary control and authority over the worksite and could itself either correct a hazard created by any subcontractor, even without that subcontractor's consent, or direct any subcontractor to abate a hazard and abide by safety standards. See Stipulation ¶¶ 24-27, 31-33.

As noted, a general contractor is responsible under § 654(a)(2) for safety standard violations it could reasonably have been expected to prevent or abate by reason of its supervisory capacity, regardless of whether it created the hazard or whether its employees were exposed to the hazard. Universal does not assert it could not reasonably have prevented or abated the violations here. Instead, it

-14-

stipulated Universal's field manager was present at the worksite on October 6 and in a position to observe the violations, but did not correct the violations or direct Zahner to correct the violations, despite the field manager's authority to do so. See Stipulation ¶¶ 5, 14-17, 31-33. As such, the Commission's conclusion that Universal was liable under § 654(a)(2) for the October 6 violations is supported by substantial evidence and is not arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. See Interstate , 74 F.3d at 226.

AFFIRMED.

No. 98-9519, Universal Construction Company., Inc. v. Occupational Safety and
Health Review Commission.


KELLY, Circuit Judge, concurring.


I respectfully concur in the court's opinion for two reasons. First, our prior decision in Clarkson Constr. Co. v. Occupational Safety & Health Review Comm'n, 531 F.2d 451, 456-58 (10th Cir. 1976), is tantamount to the adoption of a multi-employer doctrine in this circuit, particularly when viewed against the backdrop of Judge Seth's dissent, see id. at 459 (Seth, J., dissenting), and we are bound by circuit precedent. Second, the parties stipulated that (1) Universal's field manager and foreman were present at the worksite on the day in question, (2) they had the authority to direct abatement, and (3) the field manager "was in position to observe the actions of Zahner's employees and contractually had the authority to direct Zahner's foreman . . . to correct the hazards." 2 Agency R., Joint Stipulation, ¶¶ 5, 6, 14, 15, 31-33. Given these stipulations, it is not necessary to decide the outer limits of the doctrine.