O’BRIEN, J.,
dissenting.
Longhorn cannot credibly claim to have been unaware of the dangerous condition for which it was cited and ultimately sanctioned. Instead it attempts to shift the focus from its inadequate concern for safety to a terminology war. Preferring rhetoric to- substance is most convenient.
Is a picture “worth a thousand words?” It is here and for that reason I have attached a copy of page 1 of Exhibit C-4 from the administrative record. See Appendix. It critically informs the debate in that it shows the subject of the “floor hole”/“floor opening” controversy. The parties are, of course, familiar with it, but for those less intimately involved it is critical.[1] According to the Majority, the ALJ acted arbitrarily and capriciously in deciding *684 that the subject hole was a “floor hole,” a legal determination. I think it is a factual question subject only to substantial evidence review and respectively dissent from that portion of the opinion. The record contains sufficient evidence to support the administrative decision. I join the opinion in all other respects.
Longhorn’s main complaint is that it was denied fair notice that the Secretary of Labor would apply its “floor hole” regulation to Longhorn’s “floor opening.” Nonsense. Due process requires OSHA citations to “give reasonably particular notice so that the cited employer will understand the charge being made and will have a full and fair opportunity to prepare and present a defense.” Baroid Div. of NL Indus., Inc. v. Occupational Safety & Health Review Comm’n, 660 F.2d 439, 448 (10th Cir. 1981). However, “[citations ... are prepared by inspectors who are not legally trained and who should act with dispatch. For these reasons, citations should not be as tightly construed as other pleadings a grand jury indictment, for example. Enforcement of the Act would be crippled if the Secretary were inflexibly held to a narrow construction of citations issued by his inspectors.” Id. (citation and quotation marks omitted). Longhorn cannot seriously claim it was confused about the basis for the citation or that no violation existed— there was a gaping hole in the platform posing a hazard to Longhorn’s employees which was not guarded by a railing, covered, or constantly attended by someone. 29 C.F.R. § 1910.23(a)(7), (8). The quarrel is simply over nomenclature — a “floor hole” versus a “floor opening.” It is a distinction without a difference in this case because Longhorn was in violation of an OSHA standard regardless of the name assigned to the hola For that reason, I agree with the Secretary that Longhorn would not be prejudiced by a holding that it violated the “floor-opening” standard. Indeed, the Secretary requested an amendment to the citation in its post-hearing brief before the ALJ. (R. at 594.)
However, because the ALJ did not rely on an amendment of the citation to affirm the citation, neither will I. See Biodiversity Conservation All. v. Jiron, 762 F.3d 1036, 1060 (10th Cir. 2014) (a court may uphold agency action only “on the basis articulated by the agency itself’). Instead, we should affirm because the ALJ’s decision is supported by substantial evidence.
Determining whether a hole is a “floor hole” or a “floor opening” depends on the hole’s dimensions, whether a person can fall through it, and context. These are factual findings. Such findings are “conclusive” if supported by “substantial evidence.” 29 U.S.C. § 660(a). “This standard is satisfied [if], after conducting a plenary review of the record, a reasonable mind would consider the evidence adequate to support the conclusion reached.” Universal Constr. Co., Inc. v. Occupational Safety & Health Review Comm’n, 182 F.3d 726, 732 (10th Cir. 1999) (quotation marks omitted).
To establish a violation of an occupational safety and health standard, the Secretary of Labor must prove by a preponderance of the evidence that “(1) the standard applies to the cited condition; (2) the terms of the standard were violated; (3) one or more of the employer’s employees had access to the cited conditions; and (4) the employer knew, or with the exercise of reasonable diligence, could have known of the violative conditions.” Sec’y of Labor v. Ormet Corp., 14 BNA OSHC 2134, at *2 (No. 85-531, 1991). The ALJ found the Secretary satisfied each element: (1) the “floor hole” standard applied because the hole’s dimensions were “approximately one foot by two feet” and “given the location of the equipment surrounding the hole, it was a hole ‘into which persons may accidentally *685 walk’ but not one ‘through which persons may fall;”’ (2) the “floor hole” standard was violated because, as Klostermann testified, Longhorn’s employees worked in the area surrounding the hole and could step into it loading pipe onto the pipe slide (V-door), there were no standard railings or cover, and there was no one attending the hole while it was uncovered; (3) Longhorn’s employees were within the “zone of danger,” that is, they were exposed to the danger which the “floor hole” standard was intended to prevent; and (4) Long-thorn’s on-site supervisors knew about the floor hole as they themselves created it and their knowledge is imputable to Longhorn. (R. at 643-46.)
The ALJ also found the evidence supported the Secretary’s classification of the violation as serious but for different reasons than those given by the Secretary. Although the Secretary had characterized the hazard of the hole as “an employee would fall through the floor hole to the ground over seven feet below,” that characterization was inconsistent with the regulatory definition of “floor hole.” (R. at 646.) Nevertheless, relying on Kloster-mann’s testimony, the ALJ determined the hole still presented a potential trip and fall hazard: “if one of the floor hands were to step into the hole during the process of removing pipe, they would be exposed to potential amputation hazards from the traveling blocks, elevators, and other moving machine parts.”[2] (R. at 647.) Finally, the ALJ rejected Longhorn’s impossibility defense. While it may have been impossible to guard the hole with standard railings, the ALJ found Longhorn could have fabricated a cover for the hole. In fact, Longhorn’s tool hand and on-site supervisor David de los Angeles admitted as much.'
The Majority criticizes the ALJ’s decision, claiming it confuses the “floor hole” and “floor opening” standards in three respects. First, it says the dimensions of the hole found by the ALJ describe a “floor opening” rather than a “floor hole” and therefore the ALJ erred in finding otherwise. 29 C.F.R. § 1910.21(a)(1), (2). But, by doing so, it reads the word “approximately” out of the ALJ’s finding. While the hole’s least dimension could certainly have been 12 inches or more, suggesting a “floor opening,” it also could have been slightly less than 12 inches, thereby indicating a “floor hole.” Thus, the ALJ’s finding concerning the hole’s dimensions did not preclude him from finding it to be a “floor hole.”
Second, the Majority faults the ALJ’s finding that when placed in context, the hole was not one “through which persons may fall” “given the location of equipment surrounding the hole.” (R. at 643.) The Majority claims there is no evidence that the equipment around the hole was relevant to the nature of the hazard.[3]1 cannot agree. A picture of the hole shows it to be immediately adjacent to the pipe-setting equipment and to be partially obstructed by the pipe slide or V-door. See Appendix. It was reasonable for the ALJ to find that *686 the equipment around the hole made it one “into which persons can accidentally walk” (“floor hole”) but not one “through which persons may fall” (“floor opening”). 29 C.F.R. §§ 1910.21(a)(l\ (2), 1910.23(a)(8). Moreover, it does not take an expert to see that someone who stepped into the hole could be injured, perhaps seriously, without falling through.
Finally, the Majority says the ALJ’s findings concerning the potential hazard from the hole are inconsistent with the citation and Klostermann’s testimony. Admittedly, the citation described the hazard as a potential fall from over seven feet.[4] But Klostermann testified' the hole represented a hazard because “employees could step into it causing them to trip and potentially fall into the hole. In addition to that, if they were to step into it while the traveling blocks are coming down, they could extend their hand out ... between the pipe and the traveling blocks and potentially experience an amputation.” (R. at 44.) Notably, Klostermann did not say employees could fall through the hole. In any event, our review is limited to the ALJ’s decision. And his decision that a person could not fall through the hole is supported by substantial evidence — a picture of the hole itself.[5]
Appendix
*687 [[Image here]]

. A floor hole must be covered, or cordoned off (as with a railing), or under observation by a person who can warn other employees of the danger. A floor opening, on the other hand, need not be covered, but must be condoned off, or under observation. This offending opening had none of the safeguards — it was not covered, it was not cordoned off, and it was not under observation.

. The ALJ also noted that a photograph of the hole showed a gap in the handrail adjacent to the hole. Therefore, although Longhorn's employees "may not have been able to fall through the hole itself, they could still step into it, trip, and fall over the side of the rig floor.” (R. at 647.) While true, that danger is the subject of a different citation, as the Majority Opinion has noted.

. In a footnote, the Majority rejects the Secretary's reliance on the deposition testimony of a trade association director concerning whether the hole was large enough for a person to fall through it. It says the deposition testimony does not support the Secretary’s argument. But there is an even more vital reason for not relying on the deposition — the ALJ did not rely on it. (R. at 639 n.l.)

, The citation stated:
Citation 1 Item 2A Type of Violation: Serious
29 CFR 1910.23(a)(8): Every floor hole into which employees could accidentally walk was not guarded or covered:
(a) On or about April 12, 2013, for employees tripping out of the well with the area around the drill pipe having an opening of approximately 12 inches x 24 inches and exposed to a potential fall hazard of approximately 7 feet, 8 inches, Longhorn
Service Company Rig 33 at Laroque 34-12H near Alexander, ND.
(R. at 241.)

. Longhorn argues that even if the hole is a "floor hole,” it did not violate § 1910.23(a)(8) because the uncovered hole was "constantly attended” by the two employees working on the rig. It also claims any violation of the regulation was not "serious” under 29 U.S.C. § 666(k). For the reasons given by the ALT, I would reject both arguments.