**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LONGHORN SERVICE COMPANY,

    Petitioner,

v.

THOMAS E. PEREZ, Secretary of Labor,

    Respondent.

No. 15-9554
(OSHA No. 13-1458)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.
_____

The Occupational Safety and Health Administration (OSHA) cited Longhorn Service Company for safety violations on an oil-well servicing rig. After an administrative law judge (ALJ) affirmed some of the citations, Longhorn filed a petition for review in this court. Exercising jurisdiction under 29 U.S.C. § 660(a), we grant Longhorn's petition in part, reverse the ALJ's decision on one citation, and remand for further proceedings.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Longhorn prepares wells for hydraulic fracturing. To accomplish this, Longhorn uses a truck-mounted rig that lowers a metal platform over the well bore. Pipe is then inserted through a temporary opening in the platform floor and into the well to flush out contaminants.

On April 12, 2013, Longhorn employees had finished the flushing process for a well and were removing pipe from the well. OSHA compliance officer Robert Klostermann inspected the worksite, ascertaining that the platform was over seven feet above the ground and that the pipe traveled through the platform floor via an opening that was at least twelve, if not twenty-four, inches wide in its smallest dimension and twenty-four inches wide in its largest dimension. *See* R. at 44-45, 151, 207. The platform was "missing [side] guardrails," *id.* at 72, and the opening did not have a cover or any guardrail around it, *id.* at 46. There did not appear to be anyone assigned to monitor the opening, but two Longhorn employees "were working around [it] in close quarters handling equipment." *Id.* at 48. Klostermann believed the opening was hazardous because a worker could "potentially fall into [it]" or suffer an amputation "if they were to step into it." *Id.* at 44.

As a result of his inspection, Klostermann issued several citations. Citation 1, Item 2A, alleged a serious violation of 29 C.F.R. § 1910.23(a)(8) because "[e]very floor hole into which employees could accidentally walk was not guarded or covered." R. at 528. The citation listed the hole as being "an opening of approximately 12 inches x 24 inches," and it described the hazard as a risk of falling "7 feet, 8 inches." *Id.* Another

2

citation—designated as Citation 1, Item 2B—alleged a serious violation of 29 C.F.R. § 1910.23(c)(1) due to missing guardrails around the sides of the platform. This citation also listed the hazard as a fall from "7 feet, 8 inches." *Id.* at 529.

Longhorn contested the citations, and the Secretary filed an administrative complaint. An ALJ from the Occupational Safety and Health Review Commission (OSHRC) held a trial and affirmed the floor-hole and guardrail citations. The ALJ then assessed "a grouped penalty of $3,000.00." *Id.* at 667. After the OSHRC declined to review the ALJ's decision, Longhorn filed its petition for judicial review.

## DISCUSSION

### I. Standards of Review

We review the ALJ's factual findings to determine if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a). We review his "legal conclusions to determine if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Universal Constr. Co. v. Occupational Safety & Health Review Comm'n*, 182 F.3d 726, 732 (10th Cir. 1999). In conducting our review, we give "a wide level of deference to the agency." *Id.*

### II. Floor Hole vs. Floor Opening (Citation 1, Item 2A)

Longhorn argues it was not given adequate notice that it could be sanctioned for a floor hole. "[A]n occupational safety and health standard must give an employer fair warning of the conduct it prohibits or requires, and it must provide a reasonably clear standard of culpability to circumscribe the discretion of the enforcing authority and its agents." *Usery v. Kennecott Copper Corp.*, 577 F.2d 1113, 1119 (10th Cir. 1977).

3

A floor hole is "[a]n opening measuring less than 12 inches but more than 1 inch in its least dimension . . . through which materials but not persons may fall." 29 C.F.R. § 1910.21(a)(1). Floor holes must "be guarded by either . . . a standard railing" or a cover, and when a cover is not in place, the hole must "be constantly attended by someone or . . . protected by a removable standard railing." *Id.* § 1910.23(8). A floor opening, on the other hand, is "[a]n opening measuring 12 inches or more in its least dimension . . . through which persons may fall." *Id.* § 1910.21(a)(2). Floor openings must have railings or "be constantly attended by someone," but are not required to be covered. *Id.* § 1910.23(7). The context in which a space in the floor exists can inform its characterization as either a hole or an opening. *See id.* § 1910.21(a).

The ALJ determined that context supported the floor-hole citation because the space was "approximately one foot by two feet" and a person could not fall through it "given the location of the equipment surrounding the hole." R. at 643. We conclude that this determination is arbitrary and capricious. First, the dimensions cited by the ALJ describe a floor opening, not a floor hole. Second, we have not seen, and the Secretary has not identified, evidence that equipment around the opening was relevant to the nature of the hazard. Indeed, both Klostermann's citation, which describes the hazard as a fall from over seven feet, and his testimony about the hazard suggest a fall through the opening and to the ground below.[1] Third, in addressing the hazard, the ALJ surmised that

---

[1] The Secretary maintains that the opening was not large enough for a person to fall through, and therefore, it qualified as a floor hole. But the evidence he cites is not supportive. *See* R. at 44 (testimony of Klostermann that a worker "could step

(continued)

4

a worker could trip in the opening "and fall over the side of the rig" through "a gap in the handrail adjacent to the hole." R. at 647. But as Longhorn points out, "[t]here is no allegation of a trip hazard in the [c]itation or [c]omplaint." Pet'r Reply Br. at 4. Moreover, the hazard posed by a lack of side guardrails is covered by a different citation.

It is axiomatic that "[a]n OSHA citation must give reasonably particular notice so that the cited employer will understand the charge being made and will have a full and fair opportunity to prepare and present a defense." *Baroid Div. of NL Indus., Inc. v. Occupational Safety & Health Review Comm'n*, 660 F.2d 439, 448 (10th Cir. 1981). Here, the floor-hole citation blurred floor-hole and floor-opening standards, and its character was not clarified by context.

Nevertheless, the Secretary argues that Longhorn would "not be prejudiced by this Court holding that the company violated [the floor-opening standard]" because

---

into [the opening] causing them to trip and potentially fall into [it]"); *id.* at 390 (testimony of a trade-association director who viewed a photo of the hole and opined that a fall "all the way through" would be difficult, but not impossible). And even the ALJ observed that "the problem with [the Secretary's] initial characterization was the fact that the putative injury was based on the presumption that an employee would fall through the floor hole to to the ground over seven feet below." R. at 646.

The Secretary also argues that the opening qualified as a floor hole because the floor-hole regulation lists as an example a "pipe opening," 29 C.F.R. § 1910.21(a)(1) (stating that a "floor hole" is "[a]n opening measuring less than 12 inches but more than 1 inch in its least dimension, in any floor, platform, pavement, or yard, through which materials but not persons may fall; such as a belt hole, pipe opening, or slot opening"). But that argument essentially negates the rest of the regulation, which dictates the measurements for a floor hole. "It is a well-established principle of statutory and regulatory interpretation that a provision should be read such that no term is rendered nugatory." *Morris v. U.S. Nuclear Regulatory Comm'n, 598 F.3d 677, 706 (10th Cir. 2010).*

5

Longhorn's "obligations to abate the hazard would have been the same" under either standard. Aplee. Br. at 21, 22. But the two regulations do not impose identical abatement obligations, as only floor holes must be covered. *Compare* 29 C.F.R. § 1910.23(7) ("floor opening[s] shall have standard railings[ ] or shall be constantly attended by someone") *with id.* § 1910.23(8) ("floor hole[s] . . . shall be guarded by either" a railing or a cover, and "[w]hile the cover is not in place, the floor hole shall be constantly attended by someone or shall be protected by a removable standard railing"). Also, neither of the cases advanced by the Secretary supports upholding a penalty on a violation that was not clearly charged. Specifically, *Secretary of Labor v. G&R Machinery & Equipment Co.* involved a post-hearing motion to amend a floor-hole citation that had targeted a floor opening. OSHRC Docket No. 88-707, 1989 WL 223385, at *1-2 (OSHRC June 14, 1989). The OSHRC granted the motion to amend and then proceeded to address whether the floor-opening standard had been violated. *Id.* at *2. In the case before us, however, the citation was not amended. And in *Secretary of Labor v. Munro Waterproofings, Inc.*, the citation alleged alternative hazards: either a floor hole or a floor opening. OSHRC Docket No. 16264, 1976 WL 21642, at *1 (OSHRC Aug. 2, 1976). Because the space there was twelve to fifteen inches wide in its smallest dimension, the OSHRC vacated the floor-hole portion of the citation. *Id.* at *3. By contrast, the citation against Longhorn did not contain alternative allegations.

We conclude that the ambiguities present in Citation 1, Item 2A, render it invalid. *Cf. Dole v. Briggs Constr. Co.*, 942 F.2d 318, 320 (6th Cir. 1991) (indicating that Labor

Department's allegation of a willful violation could not support liability for a repeated violation). We therefore reverse the ALJ's decision upholding that citation.

The dissent contends that Citation 1, Item 2A can be upheld for several reasons but we cannot agree. According to the dissent, the proper basis of the citation should have been apparent to Longhorn—it cannot claim to be unaware of a hazard. But were we to deny review on that basis, it would be supplying a post-hoc rationalization for the agency's action, something we are not empowered to do. Instead, we must rely upon the basis articulated by the agency. *See Biodiversity Conservation Alliance v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014). The Secretary may not allege one thing and obtain a penalty for something else without amending the citation. *See Dole*, 942 F.2d at 319-20. The dissent also views the dispute as one over nomenclature, but words in a citation matter given the need to provide fair warning and cabin agency discretion in enforcement. *Usery*, 577 F.2d at 1119.

The dissent also argues that the ALJ's decision should be reviewed as a purely factual dispute for substantial evidence. Thus, as the dissent sees it, because the citation indicated that the hole was an opening of approximately 12 inches by 24 inches, it could have been slightly less than 12 inches and thus a floor hole. But the ALJ did not rely upon the possibility of a smaller dimension. While the dimensions of a space and whether a person can fall through to the ground are factual matters, whether the facts, when aggregated with the context, satisfy the relevant legal standard requires legal analysis. In any event, because the cited standard does not apply, there is not substantial

7

evidence to support the stated basis of the citation. *Sanderson Farms, Inc. v. Perez*, 811 F.3d 730, 738 (5th Cir. 2016).

Viewing the photographic evidence, the dissent contends that the equipment surrounding the space supports the ALJ's use of context in characterizing the space as a floor hole. But the ALJ never mentioned how the equipment around the space would have prevented a fall to the ground below. Suffice it to say, we are reluctant to sustain a citation based upon speculation and conjecture, even our own.

Finally, there is no getting around that the citation described the potential hazard as a fall from over seven feet. The dissent reminds us that Klostermann did not say that a worker could fall through the hole, and focuses on Klostermann's testimony about a potential amputation. But a review of the record indicates that Klostermann's concern was twofold: falling into the hole and, separately, stepping into it and suffering an amputation. R. at 44. In sum, we are not persuaded by the dissent.

### III. Seriousness of the § 1910.23(c)(1) Violation (Citation 1, Item 2B)

Longhorn does not contest the ALJ's finding that it violated § 1910.23(c)(1) by failing to have guardrails on all open sides of the platform. Rather, Longhorn maintains that the violation was not serious. A violation is serious "if there is a substantial probability that death or serious physical harm could result." 29 U.S.C. § 666(k).

The ALJ found the violation was serious based on Klostermann's testimony that a fall off the platform "would involve broken bones or back injuries and . . . would require medical attention." R. at 66. Longhorn complains that Klostermann was not qualified as an expert to render that opinion. But Longhorn cites no authority, and we have found

8

none, requiring expert testimony on the issue of seriousness. As a general matter, expert testimony is unnecessary for matters of common knowledge. *See* 6 Clifford S. Fishman & Anne T. McKenna, Jones on Evidence § 40:3 (7th ed. 2016). Further, the ALJ relied on several cases noting that falls from six feet and higher can cause serious injuries. *See, e.g.*, *Sec'y of Labor v. N. Atl. Fish Co.*, OSHRC Docket Nos. 98-0848, 98-0849, 2001 WL 1263331, at *2 (OSHRC July 9, 2001) (concluding that "the severity of predictable injuries [from a fall of at least six feet], such as broken bones or death, support[ed] the serious classification of [the employer's] violation").

We conclude that the ALJ properly classified Longhorn's § 1910.23(c)(1) violation as serious.

## CONCLUSION

We grant Longhorn's petition for review to the extent it challenges the ALJ's affirmance of Citation 1, Item 2A. The remainder of Longhorn's petition is denied. This matter is remanded to the OSHRC to vacate Citation 1, Item 2A, and to enter a separate penalty for the Citation 1, Item 2B violation.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge

9

Case No. 15-9554 *Longhorn Service Co. v. Perez*
**O'BRIEN**, J., dissenting.

Longhorn cannot credibly claim to have been unaware of the dangerous condition

for which it was cited and ultimately sanctioned. Instead it attempts to shift the focus

from its inadequate concern for safety to a terminology war. Preferring rhetoric to

substance is most convenient.

Is a picture "worth a thousand words?" It is here and for that reason I have

attached a copy of page 1 of Exhibit C-4 from the administrative record. *See* Appendix.

It critically informs the debate in that it shows the subject of the "floor hole"/"floor

opening" controversy. The parties are, of course, familiar with it, but for those less

intimately involved it is critical.[1] According to the Majority, the ALJ acted arbitrarily

and capriciously in deciding that the subject hole was a "floor hole," a legal

determination. I think it is a factual question subject only to substantial evidence review

and respectively dissent from that portion of the opinion. The record contains sufficient

evidence to support the administrative decision. I join the opinion in all other respects.

Longhorn's main complaint is that it was denied fair notice that the Secretary of

Labor would apply its "floor hole" regulation to Longhorn's "floor opening." Nonsense.

Due process requires OSHA citations to "give reasonably particular notice so that the

cited employer will understand the charge being made and will have a full and fair

---

[1] A floor hole must be covered, or cordoned off (as with a railing), or under observation by a person who can warn other employees of the danger. A floor opening, on the other hand, need not be covered, but must be condoned off, or under observation. This offending opening had none of the safeguards—it was not covered, it was not cordoned off, and it was not under observation.

opportunity to prepare and present a defense." *Baroid Div. of NL Indus., Inc. v. Occupational Safety & Health Review Comm'n*, 660 F.2d 439, 448 (10th Cir. 1981). However, "[c]itations . . . are prepared by inspectors who are not legally trained and who should act with dispatch. For these reasons, citations should not be as tightly construed as other pleadings a grand jury indictment, for example. Enforcement of the Act would be crippled if the Secretary were inflexibly held to a narrow construction of citations issued by his inspectors." *Id.* (citation and quotation marks omitted). Longhorn cannot seriously claim it was confused about the basis for the citation or that no violation existed—there was a gaping hole in the platform posing a hazard to Longhorn's employees which was not guarded by a railing, covered, or constantly attended by someone. 29 C.F.R. § 1910.23(a)(7), (8). The quarrel is simply over nomenclature—a "floor hole" versus a "floor opening." It is a distinction without a difference in this case because Longhorn was in violation of an OSHA standard regardless of the name assigned to the hole. For that reason, I agree with the Secretary that Longhorn would not be prejudiced by a holding that it violated the "floor-opening" standard. Indeed, the Secretary requested an amendment to the citation in its post-hearing brief before the ALJ. (R. at 594.)

However, because the ALJ did not rely on an amendment of the citation to affirm the citation, neither will I. *See Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1060 (10th Cir. 2014) (a court may uphold agency action only "on the basis articulated by the agency itself"). Instead, we should affirm because the ALJ's decision is supported by substantial evidence.

Determining whether a hole is a "floor hole" or a "floor opening" depends on the hole's dimensions, whether a person can fall through it, and context. These are factual findings. Such findings are "conclusive" if supported by "substantial evidence." 29 U.S.C. § 660(a). "This standard is satisfied [if], after conducting a plenary review of the record, a reasonable mind would consider the evidence adequate to support the conclusion reached." *Universal Constr. Co., Inc. v. Occupational Safety & Health Review Comm'n*, 182 F.3d 726, 732 (10th Cir. 1999) (quotation marks omitted).

To establish a violation of an occupational safety and health standard, the Secretary of Labor must prove by a preponderance of the evidence that "(1) the standard applies to the cited condition; (2) the terms of the standard were violated; (3) one or more of the employer's employees had access to the cited conditions; and (4) the employer knew, or with the exercise of reasonable diligence, could have known of the violative conditions." *Sec'y of Labor v. Ormet Corp.*, 14 BNA OSHC 2134, at *2 (No. 85-531, 1991). The ALJ found the Secretary satisfied each element: (1) the "floor hole" standard applied because the hole's dimensions were "approximately one foot by two feet" and "given the location of the equipment surrounding the hole, it was a hole 'into which persons may accidentally walk' but not one 'through which persons may fall;'" (2) the "floor hole" standard was violated because, as Klostermann testified, Longhorn's employees worked in the area surrounding the hole and could step into it loading pipe onto the pipe slide (V-door), there were no standard railings or cover, and there was no one attending the hole while it was uncovered; (3) Longhorn's employees were within the "zone of danger," that is, they were exposed to the danger which the "floor hole"

- 3 -

standard was intended to prevent; and (4) Longhorn's on-site supervisors knew about the floor hole as they themselves created it and their knowledge is imputable to Longhorn. (R. at 643-46.)

The ALJ also found the evidence supported the Secretary's classification of the violation as serious but for different reasons than those given by the Secretary. Although the Secretary had characterized the hazard of the hole as "an employee would fall through the floor hole to the ground over seven feet below," that characterization was inconsistent with the regulatory definition of "floor hole." (R. at 646.) Nevertheless, relying on Klostermann's testimony, the ALJ determined the hole still presented a potential trip and fall hazard: "if one of the floor hands were to step into the hole during the process of removing pipe, they would be exposed to potential amputation hazards from the traveling blocks, elevators, and other moving machine parts."[2] (R. at 647.) Finally, the ALJ rejected Longhorn's impossibility defense. While it may have been impossible to guard the hole with standard railings, the ALJ found Longhorn could have fabricated a cover for the hole. In fact, Longhorn's tool hand and on-site supervisor David de los Angeles admitted as much.

The Majority criticizes the ALJ's decision, claiming it confuses the "floor hole" and "floor opening" standards in three respects. First, it says the dimensions of the hole found by the ALJ describe a "floor opening" rather than a "floor hole" and therefore the

---

[2] The ALJ also noted that a photograph of the hole showed a gap in the handrail adjacent to the hole. Therefore, although Longhorn's employees "may not have been able to fall through the hole itself, they could still step into it, trip, and fall over the side of the rig floor." (R. at 647.) While true, that danger is the subject of a different citation, as the Majority Opinion has noted.

ALJ erred in finding otherwise. 29 C.F.R. § 1910.21(a)(1), (2). But, by doing so, it reads the word "approximately" out of the ALJ's finding. While the hole's least dimension could certainly have been 12 inches or more, suggesting a "floor opening," it also could have been slightly less than 12 inches, thereby indicating a "floor hole." Thus, the ALJ's finding concerning the hole's dimensions did not preclude him from finding it to be a "floor hole."

Second, the Majority faults the ALJ's finding that when placed in context, the hole was not one "through which persons may fall" "given the location of equipment surrounding the hole." (R. at 643.) The Majority claims there is no evidence that the equipment around the hole was relevant to the nature of the hazard.[3] I cannot agree. A picture of the hole shows it to be immediately adjacent to the pipe-setting equipment and to be partially obstructed by the pipe slide or V-door. *See* Appendix. It was reasonable for the ALJ to find that the equipment around the hole made it one "into which persons can accidentally walk" ("floor hole") but not one "through which persons may fall" ("floor opening"). 29 C.F.R. §§ 1910.21(a)(1), (2), 1910.23(a)(8). Moreover, it does not take an expert to see that someone who stepped into the hole could be injured, perhaps seriously, without falling through.

Finally, the Majority says the ALJ's findings concerning the potential hazard from the hole are inconsistent with the citation and Klostermann's testimony. Admittedly, the

---

[3] In a footnote, the Majority rejects the Secretary's reliance on the deposition testimony of a trade association director concerning whether the hole was large enough for a person to fall through it. It says the deposition testimony does not support the Secretary's argument. But there is an even more vital reason for not relying on the deposition—the ALJ did not rely on it. (R. at 639 n.1.)

citation described the hazard as a potential fall from over seven feet.[4]  But Klostermann testified the hole represented a hazard because "employees could step into it causing them to trip and potentially fall into the hole.  In addition to that, if they were to step into it while the traveling blocks are coming down, they could extend their hand out . . . between the pipe and the traveling blocks and potentially experience an amputation."  (R. at 44.)  Notably, Klostermann did not say employees could fall <u>through</u> the hole.  In any event, our review is limited to the ALJ's decision.  And his decision that a person could not fall through the hole is supported by substantial evidence—a picture of the hole itself.[5]

---

[4] The citation stated:

<u>Citation 1 Item 2A</u> Type of Violation: **Serious**

29 CFR 1910.23(a)(8): Every floor hole into which employees could accidentally walk was not guarded or covered:

(a) On or about April 12, 2013, for employees tripping out of the well with the area around the drill pipe having an opening of approximately 12 inches x 24 inches and exposed to a potential fall hazard of approximately 7 feet, 8 inches, Longhorn Service Company Rig 33 at Laroque 34-12H near Alexander, ND.

(R. at 241.)

[5] Longhorn argues that even if the hole is a "floor hole," it did not violate § 1910.23(a)(8) because the uncovered hole was "constantly attended" by the two employees working on the rig.  It also claims any violation of the regulation was not "serious" under 29 U.S.C. § 666(k).  For the reasons given by the ALJ, I would reject both arguments.

- 6 -

Appendix

